| | |
|---|---|
| District Court, Boulder County, State of Colorado<br>Court Address:　　　1777 6th St.<br>　　　　　　　　　　　Boulder, Colorado 4249<br>Phone Number:　　　303-441-3750<br>_____ | DATE FILED: January 8, 2021 6:10 PM<br>FILING ID: 7139C984DCE94<br>CASE NUMBER: 2021CV30021 |
| **ROOFTOP RESTORATION, INC.**, a Colorado corporation<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SYNDICATE 4000, ASPEN INSURANCE UK LIMITED, SCOTTSDALE INSURANCE COMPANY, PARTNER RE IRELAND INSURANCE LIMITED, HALLMARK SPECIALTY INSURANCE COMPANY, FIRST SPECIALTY INSURANCE CORPORATION, NAVIGATORS SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, STARR SURPLUS LINES INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA**<br><br>　　　　Defendants.<br>_____ | ▲　　　　　　　　　　▲<br><br>**COURT USE ONLY**<br>_____<br><br>Case Number: _____<br><br>Division　　　Courtroom: |
| Attorneys for Plaintiff<br>ANDERSON LAW GROUP<br>M. Stuart Anderson, Esq.<br>Thomas H. Wagner, Esq.<br>7385 W. Hwy 50<br>Salida, CO  81201<br>Phone Number: (719) 539-7003<br>Fax Number: (719) 539-2206<br>Atty. Reg.:  30251, 38135 | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Rooftop Restoration, Inc. ("Rooftop"), through counsel, submits the following Complaint against the above-named Defendants, as well as its Jury Demand.

## I. THE PARTIES, JURISDICTION, AND VENUE

1.      Rooftop is a Colorado corporation in good standing. Rooftop is engaged in the construction business and it specializes in roofing work.

2.      Defendant Certain Underwriters of Lloyds at London ("Lloyd's") are syndicates of insurance underwriters and companies organized through Lloyd's of London in England.   The insurance materials reference that the Lloyd's of London Syndicate 4000 participated in the pertinent insurance policy(ies).

3.      Upon information and belief, Lloyd's regularly provides insurance to Colorado residents and entities through itself and its participating insurance underwriters. The pertinent policy(ies) reference(s) Lloyd's as "London" in the "Schedule of Participating Insurers Carriers" in the "Aggregate Policy" layer of that schedule with policy numbers of PG1501045, RT15PEM037, and PG1500944.   (Ex.1, Evidence of Coverage, p.5.)[1] Further, in the "Primary $25 x Aggregate Policy" layer of said schedule policy numbers of RT15PEM037 and PG1500944 are also referenced as policy numbers for Lloyd's.

4.      Aspen Insurance UK Limited ("Aspen") is named in the pertinent policy(ies) of insurance as a participating insurance underwriter and insurer for some or all of the insurance coverages at issue in this action.  (Ex. 1, p. 5.)  Aspen Insurance UK Limited's principal place of business is 30 Fenchurch Street, London, England.   The pertinent policy(ies) reference Aspen as "Aspen" in the "Schedule of Participating Insurers Carriers" in the "Aggregate Policy" layer of that schedule with a policy number of PRAFPY015. Further, in the "Primary $25 x Aggregate Policy" layer of that schedule with the same said policy number.

---

[1] Please note that pages from the policy are referenced herein with their pdf page number and not the internal pagination of the document itself.

5.     Scottsdale Insurance Company ("Scottsdale") is a named in the pertinent policy(ies) of insurance as a participating insurance underwriter and insurer for some or all of the insurance coverages at issue in this action.  (Ex. 1, p. 5.)  Scottsdale Insurance Company's principal place of business is 8877 N. Gainey Center Dr., Scottsdale AZ.  The pertinent policy(ies) reference Scottsdale as "Scottsdale" in the "Schedule of Participating Insurers Carriers" in the "Primary $25 x Aggregate Policy" layer of that schedule with a policy number of AJS0000270.

6.     Also listed in the pertinent policy(ies) of insurance are the following additional participating insurance underwriters and companies and/or policy numbers:

a.  Lloyd's (referenced also as Hiscox) with policy numbers of URS2540581.15;

b.  PartnerRe Ireland Insurance Limited (referenced as Partner Re) with a policy number of F571013;

c.  Lloyd's (referenced as London) with a policy number of RT15PEM037;

d.  Hallmark Specialty Insurance Company (referenced as Hallmark) with a policy number of 73PRX16EBBD;

e.  Lloyd's (referenced as Hallmark) with a policy number of 93PRX16EBBE;

f.  First Specialty Insurance Corporation (referenced as Swiss Re) with a policy number of ESP 2001566;

g.  Lloyd's (referenced as Brit Global) with a policy number of PD-10771-00;

h.  Navigators Specialty Insurance Company (referenced as Navigators) with a policy number of NY15LCM0BBUVD01;

i.   Aspen Insurance UK Limited (referenced as Aspen) with a policy number of PXAFW1V15;

j.   PartnerRe Ireland Insurance Limited (referenced as Partner Re) with a policy number of F573356;

k.   Hallmark Specialty Insurance Company (referenced as Hallmark) with a policy number of 73PRX16EBBF;

l.   Lloyd's (referenced as Hallmark) with a policy number of 93PRX16EBC0;

m.  First Specialty Insurance Corporation (referenced as Swiss Re) with a policy number of ESP 2001567;

n.   Lexington Insurance Company (referenced as Lexington) with a policy number of 011525046/00;

o.   Lloyd's (referenced as Brit Global) with a policy number of PD-10771-00;

p.   Scottsdale Insurance Company (referenced as Scottsdale) with a policy number of AJS0000270;

q.   PartnerRe Ireland Insurance Limited (referenced as Partner Re) with a policy number of F573357;

r.   Lloyd's (referenced as London) with a policy number of PG1501041;

s.   Lexington Insurance Company (referenced as Lexington) with a policy number of 011525046/00;

t.   Lexington Insurance Company (referenced as Lexington) with a policy number of 011525046/00;

u.   Starr Surplus Lines Insurance Company (referenced as Starr Specialty Lines) with a policy number of SLSTPTY10808315;

> v. Mitsui Sumitomo Insurance Company of America (referenced as Mitsui) with a policy number of EXP7000315;
>
> w. Lloyd's (referenced as Ironshore) with a policy number of 2535900.

7.      Jurisdiction is proper in the State of Colorado pursuant to Article VI, Section 9 of the Constitution of the State of Colorado.

8.      Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1) as the Defendants, upon information and belief, are all nonresidents of the State of Colorado.

9.      This Court has personal jurisdiction over the Defendants in this action pursuant to C.R.S. §13-1-124(1)(a, b, and d). This matter involves an insurance contract(s) issued by the Defendants which called for performance in the State of Colorado, as well as alleged torts and violations of Colorado statutes.

## II. FACTUAL ALLEGATIONS

10.     Vukota Capital Management aka Vukota Capital Management LLC is the management and/or parent company for various undertakings for its subsidiaries, associated or allied companies, and associated real properties.

11.     Vukota Capital Management's subsidiaries, associated or allied companies include, but are not limited to, Vukota Realty & Management, Vukota Stratus Apartments, LP, Vukota Tanglewood OpCo, LLC, Vukota Summer Grove OpCo, LLC, VCM Aviator Apartment Homes, LP, Vukota Residences at Austin Bluffs, LLLP, VCM Chestnut Springs Apartment, LLLP, Vukota Wind River Place, LLLP and Vukota Villages at Woodman, LLC (hereinafter referred to collectively as "Vukota").

12.     Lloyd's and the other named defendants (referred to collectively as the "Lloyd's Insurance Syndicate") issued a policy of insurance to Vukota titled "Master Policy

of Insurance Policy Evidence of Coverage" with a certificate number of RW001977 and with various associated policy numbers from the participating insurers as referenced herein and/or as may be found in said policy filed herewith this Complaint as Ex. "1". The "Master" policy along with the various policy numbers associated with the participating insurers will be referred to collectively as the "Vukota Policy".

13.    Among the real property covered under the Vukota policy were the following properties which will be referred to collectively as the "Insured Properties":

a.    Villages at Woodmen, 1629 E. Woodmen Rd., Colorado Springs, Colorado (Parcel # 6308411032);

b.    Residence at Austin Bluffs, 4110 Morning Sun Ave., Colorado Springs, Colorado (Parcel #6327111035);

c.    Stratus Apartment Home, 4255 Airport Rd., Colorado Springs, Colorado (Parcel #6423201003);

d.    Tanglewood Apartments, 3803 Half Turn Rd., Colorado Springs, Colorado (Parcel # 63263-09-030);

14.    The Vukota Policy is a replacement cost value policy and covers loss to the Insured Properties.

15.    In exchange for the premiums paid by Vukota, the Lloyd's Insurance Syndicate promised to perform according to the terms and provisions of the Vukota Policy.

16.    The Lloyd's Insurance Syndicate owed the following duties with respect to the handling of any claim submitted pursuant to the Vukota Policy:

a) The Lloyd's Insurance Syndicate must treat the policyholder's interests with equal regard as it does its own interests;

b) The Lloyd's Insurance Syndicate must assist the policyholder with the claim;

c) The Lloyd's Insurance Syndicate must conduct a full, fair, and prompt investigation of the claim at its own expense;

d) The Lloyd's Insurance Syndicate must fully, fairly, and promptly evaluate and adjust the claim;

e) The Lloyd's Insurance Syndicate must not deny a claim or any part of a claim based on insufficient information, speculation, or biased information;

f) The Lloyd's Insurance Syndicate must not make unreasonably low offers to cover a claim;

g) The Lloyd's Syndicate must not unreasonably delay the handling of a claim; and

h) The Lloyd's Syndicate must pay all undisputed amounts of a claim within 30 days.

17.     On or about January 9, 2017, a substantial storm loss occurred at the Insured Properties which included, but was not limited to, wind damage (the "Storm Loss").

18.     The Storm Loss was a covered loss under the Policy.

19.     Vukota provided timely notice of the Storm Loss to the Lloyd's Insurance Syndicate, which assigned various claim numbers including, but not limited to

1000191136, RT16PEM0058/ 50933, 180PG1600944/PG1600944BHA, AFS0000235/01772493, PRAGWPP16/PR1670028777, B0180PG1600944, and 01772493 (collectively referred to herein as the "Claim(s)").

20.     The Vukota Policy contained a four-year statute of limitations.

21.     The language of the Vukota Policy issued by the Lloyd's Insurance Syndicate made this event causing damage to the Insured Properties a replacement cost event.

22.     On or about February 28, 2017, Vukota signed a Construction Contract with Rooftop regarding the repairs necessary at the Insured Properties as a result of the Storm Loss. The Construction Contract also provided for an irrevocable assignment of Vukota's claims against the Lloyd's Insurance Syndicate arising out of the Storm Loss and the Claim(s).

23.     Vukota's assignment of claim set forth in the Construction Contract to Rooftop is valid and enforceable. *See Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1053 (Colo. 1994); *Rooftop Restoration, Inc. v. Ohio Sec. Ins. Co.*, 2015 WL 9185679, at *3 (D. Colo. Dec. 17, 2015); *Kyle W. Larson Enterprises, Inc. v. Allstate Ins. Co.*, 305 P.3d 409 (Colo. 2012).

24.     As a result of the assignment of claim in the Construction Contract, the contractor, Rooftop, effectively "stepped into the shoes" of the insured, Vukota, with respect to certain claims against the Lloyd's Insurance Syndicate which arise out of the Storm Loss and the Claim(s). Therefore, the Lloyd's Insurance Syndicate owed Rooftop all of the duties set forth above with respect to the Storm Loss and the Claim.

25.     Separate and apart from its standing as an assignee of Vukota, Rooftop, as the contractor who has done the work and supplied the materials for the repair and replacement of storm damages, has its own right to bring the claims herein.

26.     The Lloyd's Insurance Syndicate assigned Engle Martin and Associates to act as its third-party administrator ("TPA") for the Vukota Claim(s).

27.     Based upon the coverage purchased from the Lloyd's Insurance Syndicate contained within the Vukota Policy, Rooftop requested timely and full payment for all covered damages arising from the Storm Loss and Claim(s).

28.     The Lloyd's Insurance Syndicate required Rooftop to submit multiple proofs in violation of the insurance contract and C.R.S. §10-3-1104.

29.     The Lloyd's Insurance Syndicate refused to accept a master proof as permitted by the policy and then required Rooftop to submit additional proofs of loss in order to obtain claim payments.

30.     The Lloyd's Insurance Syndicate provided erroneous claims materials to Rooftop that may have materially harmed the Claim(s) if they had been used by Rooftop.

31.     The Lloyd's Insurance Syndicate, acting through its TPA, prepared various estimates of the storm damages for the damages to the total damages to the Insured Properties including, but not limited to, replacement cost and actual cost values.

32.     The Lloyd Insurance Syndicates prepared multiple estimates for all the Insured properties.

33.     On or before July of 2020, the Lloyd's Insurance Syndicate estimated that the replacement cost value for the damages from the storm was approximately $984,400.73.

34.    Rooftop executed a proof of loss for that amount on September 1, 2020. Payment of the balance due was required within 30 days under the Vukota Policy and Colorado law.

35.    The Lloyd's Insurance Syndicate is liable for the acts or omissions of the third parties it relied on to adjust and handle the claim including, but not limited to, the acts and omissions of its TPA, Engle Martin & Associates.

36.    The Vukota Policy provides that service of process of suit papers may be made on the Lloyd's Insurance Syndicate at One State Street Plaza, 8th floor, New York, New York 10004.  Further, the Vukota Policy provides that service of process may be made on the Colorado Insurance Commissioner.

37.    This claims in this action are directed and made at the above-named defendants and any other insurers that may have been omitted but appear in the policy attached hereto and incorporated herein by reference and insurers whose names that are not in the policy but may have participated anonymously or otherwise in the Lloyd's Insurance Syndicate related to the Vukota Policy.

### III. FIRST CLAIM FOR RELIEF

### Breach of Contract

38.    Rooftop incorporates the allegations contained in the paragraphs above as if fully set forth herein.

39.    As set forth above, the Vukota Policy is an enforceable contract for insurance covering the losses alleged herein.

40.    Vukota and Rooftop fully complied with all the provisions of the Policy.  All conditions precedent have been waived or are excused.

41.     The Lloyd's Syndicate breached the Vukota Policy by, among other things, the following:

a) The Lloyd's Insurance Syndicate failed to treat the policyholder's, including its assignee Rooftop's, and/or Rooftop's interests with equal regard as it does its own interest;

b) The Lloyd's Insurance Syndicate failed to properly assist the policyholder, it assignee Rooftop, and Rooftop with the Claim;

c) The Lloyd's Insurance Syndicate failed to conduct a full, fair, and prompt investigation of the Claim(s);

d) The Lloyd's Insurance Syndicate failed to fully, fairly, and promptly evaluate and adjust the Claim(s);

e) The Lloyd's Insurance Syndicate denied and delayed the Claim(s) even when it knew from its own valuations that the Claim(s) should have been paid;

f) The Lloyd's Insurance Syndicate unreasonably delayed the handling of the Claim(s);

g) Forcing Rooftop to submit multiple proofs of loss;

h) Refusing to accept a master proof as expressly allowed by the policy and instead forcing Rooftop to submit multiple proofs of loss;

i) Providing erroneous claims materials; and

j) The Lloyd's Insurance Syndicate failed to pay all undisputed amounts of the Claim within 30 days.

42.     These and other actions of The Lloyd's Insurance Syndicate constitute a breach of the insurance contract and is a breach of the reasonable expectations concerning the coverage to be provided under the Vukota Policy.

43.     The Lloyd's Insurance Syndicate's breach of the Policy caused Vukota and Rooftop to suffer damages.

44.     As a result of The Lloyd's Insurance Syndicate's breaches of the Policy, it is liable to Rooftop, as the assignee of Vukota, for damages, including the amount owed pursuant the Claim(s) and Policy, together with pre-judgment interest at the highest rate and earliest time allowed by law, its reasonable attorney fees as allowed by law, and costs allowed by law.

45.     As a result of The Lloyd's Insurance Syndicate's breaches of the Policy, The Lloyd's Insurance Syndicate is liable to Rooftop for amounts due to Rooftop in its own right, as a first-party claimant separate and apart from its standing as the assignee of Vukota.

46.     The amount due to Rooftop in its capacity as assignee of Vukota and as a first-party claimant in its own right will be determined at trial.

## IV. SECOND CLAIM FOR RELIEF

### Violation of C.R.S. § 10-3-1115 &1116

47.     Rooftop incorporates the allegations contained in the paragraphs above as if fully set forth herein.

48.     Vukota suffered a loss covered by the Vukota Policy, and it and Rooftop submitted the Claim(s) to The Lloyd's Insurance Syndicate.

49.     As set forth herein, The Lloyd's Insurance Syndicate breached the Policy and handled the Claim(s) in an unreasonable manner.

50.     The Lloyd's Insurance Syndicate improperly handled the Claim(s) thereby damaging Vukota and Rooftop by delaying and/or denying benefits owed pursuant to the Vukota Policy.

51.     The Lloyd's Insurance Syndicate refused to pay the full amounts of the losses it determined had been sustained and were due under the policy.

52.     The Lloyd's Insurance Syndicate delayed and denied payment of covered benefits without a reasonable basis for its actions, and it continues to delay and deny benefits without a reasonable basis for its actions.

53.     The Lloyd's Insurance Syndicate compelled Rooftop to institute litigation to recover amounts due under the Vukota Policy by offering substantially less than the amount ultimately agreed to be owed pursuant to the Claim.

54.     The Lloyd's Insurance Syndicate violated C.R.S. § 10-3-1115, and it is liable to Rooftop for damages and relief pursuant to C.R.S. § 10-3-1116.

55.     Rooftop brings this claim as assignee and in its own right, as first-party claimant.

56.     Rooftop is therefore entitled to two times the covered benefit, reasonable attorney fees and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest and earliest rate allowed by law.

**V. JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against the Lloyd's Insurance Syndicate on its claims for relief as follows:

1. Damages due to The Lloyd's Insurance Syndicate's breach of the Vukota Policy;

2. Two times the amount of all covered benefits under the Vukota Policy unreasonably delayed and/or denied;

3. Costs, expert witness fees, and reasonable attorney fees incurred in prosecuting the claims against the Lloyd's Insurance Syndicate pursuant to C.R.S. § 10-3-1115 and 1116, and C.R.C.P. 54;

4. Pre- and post-judgment interest from the earliest dates allowed by law; and

5. For such other and further relief as this Court may deem just.


Dated: January 8, 2021

ANDERSON LAW GROUP

*/s/M. Stuart Anderson*
M. Stuart Anderson
Thomas H. Wagner
Anderson Law Group
7385 W. Highway 50
Salida, CO  81201
Telephone: (719) 539-7003
tom@anderson-lg.com
*Counsel for Plaintiff*

Plaintiff's Address:
18662 Stone Gate Dr., Suite B
Morrison, CO 80465



## *EVIDENCE OF COVERAGE*

EVIDENCE OF COVERAGE

DATE FILED: January 8, 2021 6:10 PM
FILING ID: 7139C984DCE94
CASE NUMBER: 2021CV30021

CERTIFICATE NUMBER:   RW001977

COVERAGE:   All Risk Property

PERILS:   Per Appendix B - All Risk (as defined in the master policy wording)

INSURED:   Vukota Capital Management and any subsidiary, associated or allied company, corporation, firm, organization, and any interest the Insured has in any partnership or joint venture in which the Insured has management control or ownership as now constituted or hereafter is acquired, as the respective interests of each may appear.

MAILING ADDRESS:   1800 Billings Street  Aurora, CO  80011

PERIOD:   From July 1, 2016 to July 1, 2017 both days at 12:01 a.m. Local Standard Time at the location of the property insured.

INTEREST:   Property and Time Element as per Appendix B

DEDUCTIBLES:   AOP:   Per Appendix B
Flood:   Per Appendix B
Earthquake:   Per Appendix B
Wind:   Per Appendix B
Waiting Period:   Per Appendix B

TIV:   $119,600,043

MINIMUM EARNED PREMIUM:   35%

TERRORISM SURCHARGE:   Included

LIMITS AND SUBLIMITS   $500,000,000 OVERALL PROGRAM LIMIT OF LIABILITY - FOR ANY ONE OCCURRENCE. EXCEPT PERILS OF FLOOD AND EARTHQUAKE AS NOTED BELOW. ALL SUBLIMITS



## *EVIDENCE OF COVERAGE*

BELOW APPLY ON A PER OCCURRENCE BASIS UNLESS OTHERWISE NOTED.

**SCHEDULE OF PROGRAM SUBLIMITS:**

Any one occurrence. Entire program from ground up. (Excess of deductibles)

a) $250,000,000 Loss or damage caused by peril of Flood - Per Occurrence and in the Annual Aggregate in any one policy year except $100,000,000 per occurrence and in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood for locations in Zone D and FEMA designated zones A or V

b) $250,000,000 Loss or Damage caused by peril of Earthquake (CA Excluded) - Per Occurrence and in the Annual Aggregate in any one policy year

c) $200,000,000 Loss or Damage cause by the peril of Terrorism

d) $50,000,000 Property while under the Course of Construction - Per Occurrence Per Insured

e) $50,000,000 Service Interruption (Property Damage and Time Element combined) - Per Occurrence Per Insured

f) $50,000,000 Contingent Business Interruption - Per Occurrence

g) $10,000,000 LEED Green Building Coverage, All Parts Combined - Per Occurrence

h) $10,000,000 Accounts Receivable - Per Occurrence

i) $50,000,000 Demolition and Increased Cost of Construction (coverage B & C combined) - Per Occurrence Per Insured

j) $50,000,000 Newly Acquired Property - Per Insured and subject to 90 day reporting requirement; this extension shall exclude the peril of Named Windstorm for Tier One locations unless and until accepted by underwriters

k) Greater of $25,000,000 or 25% of loss as respects Debris Removal - Per Occurrence

l) Lesser of $10,000,000 or 30 days Ingress/Egress - Per Occurrence Per Insured

m) Lesser of $10,000,000 or 30 days Civil Authority - Per Occurrence Per Insured

n) $5,000,000 Unnamed Locations - Per Occurrence

o) $5,000,000 Mold - Annual Aggregate Per Insured

p) $500,000 Inland Transit - Per Occurrence

q) $1,000,000 Loss Adjustment Expenses - Per Occurrence per Insured

r) $1,000,000 Special Perils Business Interruption

s) $250,000 Adverse Publicity - Per Occurrence

t) $500,000 Pollutant Clean Up and Removal - Any one policy year per Insured

u) $250,000 Tenant Relocation and Move-Back Expense - Per Occurrence Per Insured

v) $100,000 Communicable Disease Extra Expense - Per Occurrence

w) $100,000 Crisis Management Coverage Extension - Per Occurrence

x) $250,000 Additional Required Property Management Fees - Per Occurrence Per Insured



## *EVIDENCE OF COVERAGE*

| | |
|---|---|
| SPECIAL TERMS AND CONDITIONS - SPECIFIC TO THE INSURED: | None. |
| COINSURANCE: | Waived |
| VALUATION: | Per Appendix B |
| EXCLUSIONS: | Per Appendix B |
| TERMS AND CONDITIONS: | Per attached Appendix 'B' including but not limited to the endorsements attached. |

REAPA All Risk Property Master Policy is a master policy with the limits of liability shared among all insureds covered by the master policy. While the commercial property coverage has a maximum limit of $500,000,000 per occurrence available to all insureds, in the event of a catastrophic loss or accumulation of losses that exceed the maximum occurrence limit during the policy year, the limit will be shared proportionately with all insureds in the program. Other coverages are subject to an aggregate limit or a sublimit, as described in the manuscript policy form.

In the event of a loss or accumulation of covered losses sustained by the insured which collectively exceed the per occurrence or aggregate limits over the policy year, payment to individual covered insureds will be made on a proportional basis determined by dividing the total insurance limits available by the total loss and then applying the resulting factor to the individual insureds loss amount. The Occurrence limit will reinstate automatically if it is exhausted by an occurrence, as defined in the master manuscript policy form, within the policy term.

IMPORTANT NOTE: The Home State of the Named Insured shall be determined in accordance with the provisions of the Non-admitted and Reinsurance Act of 2010, 15. §8201, etc. ("NRRA"), and the applicable law of the Home State governing cancellation or non-renewal of insurance shall apply to the Policy.

### NO FLAT CANCELLATIONS

SUBJECTIVITIES:

Any applicable state or local surcharges or taxes are additional. Third-party inspection fees may be itemized.  If the insured recommends an inspection company we will endeavor to determine if it is approved by the insurer We will need a written request from the retail agent in order to bind coverage.  Coverage cannot be bound prior to receipt of a fully executed brokerage agreement between the retail agent and RT Specialty. The retail agent and the insured must be advised that this placement is made through the internal facilities of R-T Specialty, LLC,



## *EVIDENCE OF COVERAGE*

rather than on an open-brokerage basis.  A placement through the internal facilities of R-T Specialty, LLC may result in different compensation arrangements between R-T Specialty and the insurer(s). If the insured or retail agent has any question about compensation earned through an internal placement, please let me know.
If you need any further information about this proposal or this insurance company that we are proposing to provide your insurance please contact us.

REMARKS
The limits set forth in the attached "Schedule of Participating Insurance Carriers" are available jointly to all named and designated insureds collectively, of which you are one, and demonstrates the maximum combined available amount which may be payable to all named insureds and designated insureds combined for covered damages arising out of one single loss occurrence. For an insurer set forth in the attached "Schedule of Participating Insurance Carriers", whose participation is subject to an aggregate for any specific peril, coverage, or participation, the aggregate is the maximum amount payable to all named insureds and designated insureds under the REAPA All Risk Property Master Policy combined for the term of the contract. Once an aggregate limit has been exhausted in accordance with the policy contract terms, the insurer as set forth in the "Schedule of Participating Insurance Carriers" no longer has any liability under its specific contract. Notwithstanding the available communal limits set forth in the Master Policy, the individual limit and sublimits set forth in this evidence of coverage and the Master Policy are the only limits available for this designated insured and the insured location(s) identified herein.

PARTICIPATING LLOYDS OF LONDON SYNDICATES

ADV 780, AMA 1200, AML 2001, ANV 1861, ATL 1206, BRT 2987, Endurance , HIS 3624, KILN 510 , MKL 3000, MSP 318, PEM 4000, QBE 1886, TAL 1183, TUL1301, WRB 1967

**CONFIRMED BY:** _____ Jim Snyder _____
                                     **CONFIDENTIAL**

REAPA Wholesale
Appendix A
Schedule of Participating Insurance Carriers
Effective 9/30/2015

| Company | Layer | Percent of Layer | Policy Number | AM Best | Paper |
|---|---|---|---|---|---|
| London | Aggregate Policy | 20.00% | PG1501045 | A XV | Underwriters at Lloyds of London |
| Aspen | Aggregate Policy | 15.00% | PRAFPY015 | A XV | Aspen Insurance UK Limited |
| London | Aggregate Policy | 4.00% | RT15PEM037 | A XV | Underwriters at Lloyds of London |
| London | Aggregate Policy | 61.00% | PG1500944 | A XV | Underwriters at Lloyds of London |
| | | 100.00% | | | |
| Scottsdale | Primary $25 x Aggregate Policy | 20.00% | AJS0000270 | A+ XV | Scottsdale Insurance Company |
| Aspen | Primary $25 x Aggregate Policy | 15.00% | PRAFPY015 | A XV | Aspen Insurance UK Limited |
| London | Primary $25 x Aggregate Policy | 4.00% | RT15PEM037 | A XV | Underwriters at Lloyds of London |
| London | Primary $25 x Aggregate Policy | 61.00% | PG1500944 | A XV | Underwriters at Lloyds of London |
| | | 100.00% | | | |
| Hiscox | $25x$25 | 20.00% | URS 2540581.15 | A XV | Underwriters at Lloyds of London |
| Partner Re | $25x$25 | 20.00% | F571013 | A+ XV | PartnerRe Ireland Insurance Limited |
| London | $25x$25 | 4.00% | RT15PEM037 | A XV | Underwriters at Lloyds of London |
| Hallmark | $25x$25 | 4.00% | 73PRX16EBBD | A- VIII | Hallmark Specialty Insurance Company |
| Hallmark | $25x$25 | 4.00% | 93PRX16EBBE | A+ XV | Underwriters at Lloyds of London |
| Swiss Re | $25x$25 | 38.00% | ESP 2001566 | A+ XV | First Specialty Insurance Corporation |
| Brit Global | $25x$25 | 10.00% | PD-10771-00 | A XV | Underwriters at Lloyd's of London |
| | | 100.00% | | | |
| Navigators | $50x$50 | 10.00% | NY15LCM0BBUVD01 | A XI | Navigators Specialty Insurance Company |
| Aspen | $50x$50 | 10.00% | PXAFW1V15 | A XV | Aspen Insurance UK Limited |
| Partner Re | $50x$50 | 10.00% | F573356 | A+ XV | PartnerRe Ireland Insurance Limited |
| Hallmark | $50x$50 | 10.00% | 73PRX16EBBF | A- VIII | Hallmark Specialty Insurance Company |
| Hallmark | $50x$50 | 10.00% | 93PRX16EBC0 | A+ XV | Underwriters at Lloyds of London |
| Swiss Re | $50x$50 | 30.00% | ESP 2001567 | A+ XV | First Specialty Insurance Corporation |
| Lexington | $50x$50 | 15.00% | 011525046/00 | A XV | Lexington Insurance Company |
| Brit Global | $50x$50 | 5.00% | PD-10771-00 | A XV | Underwriters at Lloyd's of London |
| | | 100.00% | | | |
| Scottsdale | $150x$100 | 33.33% | AJS0000270 | A+ XV | Scottsdale Insurance Company |
| Partner Re | $150x$100 | 10.33% | F573357 | A+ XV | PartnerRe Ireland Insurance Limited |
| London | $150x$100 | 23.00% | PG1501041 | A XV | Underwriters at Lloyds of London |
| Lexington | $150x$100 | 33.33% | 011525046/00 | A XV | Lexington Insurance Company |
| | | 100.00% | | | |
| Lexington | $250x$250 | 44.00% | 011525046/00 | A XV | Lexington Insurance Company |
| Starr Specialty Lines | $250x$250 | 16.00% | SLSTPTY10808315 | A XV | Starr Surplus Lines Insurance Company |
| Mistui | $250x$250 | 40.00% | EXP7000315 | A+ XV | Mitsui Sumitomo Insurance Company of America |
| | | 100.00% | | | |
| Ironshore | Primary $200mm | 100.00% | 2535900 | A XV | Underwriters at Lloyds of London |

ALW2015 9/30/2015

**APPENDIX 'B'**

**MASTER PROPERTY POLICY**

1. NAMED INSURED – This policy does insure The Members (hereinafter called Insured) of Real Estate America Property Association, Inc. ("REAPA") holding valid Evidence of Commercial Property Insurance, issued by R-T Specialty, LLC (hereinafter called R-T Specialty) on behalf of the Insurers (hereinafter referred to as Insurer), any subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, joint venture, limited liability company or individual, whether wholly or partially owned or controlled by the Insured, where the Insured maintains an interest, or where the Insured is contractually required to provide insurance, as now exist or are hereafter constituted or acquired, and any other party in interest that is required by contract or other agreement to be named, all hereafter referred to as the "Insured".

2. For premium of per Declarations page this policy attaches and covers for a period of eighteen (18) months from 9/30/2015 to 6/30/2017, beginning and ending at 12:01 A.M., standard time, at the location of the property involved. It is agreed that the actual effective time of attachment of this insurance on the above date shall be the same time on the above date as the actual effective time of cancellation or expiration of the policy(ies) replaced or renewed by this policy. It is understood and agreed that the 9/30/2015 premium is based on inception values of $716,701,072.

3. PARTICIPATION - This policy covers for a percent interest in this insurance, and this Insurer shall not be liable for more than per occurrence part of a limit per occurrence. It is agreed that some per occurrence limits apply per Insured, as specified in this policy.

4. OVERALL PROGRAM LIMITS OF LIABILITY - This Insurer shall not be liable for more than its participation part of $500,000,000 for any one occurrence. When a limit of liability is shown as applying in the aggregate during any Policy year, the Company's maximum limit of liability will not exceed such limit during the policy year regardless of the number of Insured's or locations or coverage's involved.  All sublimits apply on a per occurrence basis unless otherwise noted:

    a. $250,000,000 per occurrence and in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood except $100,000,000 per occurrence and in the annual aggregate in any one policy year as respects loss or damage caused by the peril of Flood for location in FEMA designated zones A, V or D.

    b. $250,000,000 per occurrence and in the annual aggregate in any one policy year as respects loss or damage caused by the peril of earthquake.

    c. $50,000,000 per occurrence per Insured as respects property while under the course of construction;

    d. $50,000,000 per occurrence per Insured as respects Service Interruption (property damage and time element combined);

1

ALW2015 9/30/2015

**APPENDIX 'B'**

e. $50,000,000 per occurrence as respects Contingent Business Interruption;

f. $10,000,000 per occurrence as respects LEED Green Building Coverage - all parts combined;

g. $10,000,000 per occurrence as respects Accounts Receivable;

h. $50,000,000 per occurrence per Insured as respects Demolition and Increased Cost of Construction (coverages B & C combined);

i. $50,000,000 per insured as respects Newly Acquired Property subject to a 90 day reporting requirement; this extension shall exclude the peril of Named Windstorm for Tier One locations unless and until accepted by Underwriters.

j. Greater of $25,000,000 or 25% of loss per occurrence as respects Debris Removal;

k. Lesser of $10,000,000 or 30 days per occurrence per insured as respects Ingress/Egress;

l. Lesser of $10,000,000 or 30 days per occurrence per insured as respects Civil Authority;

m. $5,000,000 per occurrence as respects Unnamed Locations;

n. $5,000,000 annual aggregate per insured as respects Mold;

o. $500,000 per occurrence as respects Inland Transit;

p. $1,000,000 per occurrence per Insured as respects Loss Adjustment Expenses;

q. $1,000,000 as respects Special Perils Business Interruption.

r. $250,000 as respects Docks attached to the property.

The amount of loss from any one occurrence for which this policy is excess, shall be determined by the combined loss, damage or expense as insured under the primary policy. In the event of loss or damage involving more than one coverage or peril, The Limits of Liability of the underlying policies shall first apply to the coverage(s) or peril(s) not insured by this policy, and the remainder, if any to the coverages(s) or peril(s) as provided hereunder. Upon erosion or exhaustion of the Limits of Liability of the underlying policies, this policy shall then be liable for the loss uncollected from the coverage(s) or perils(s) insured hereunder, subject to the Limit of Liability specified herein. In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by this policy shall apply in excess of the reduced or exhausted underlying limit(s).

5. DEDUCTIBLE CLAUSE - All loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $25,000 (except as noted below):

ALW2015 9/30/2015

**APPENDIX 'B'**

a.  As respects loss or damage to property resulting from the peril of Earthquake, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $100,000.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein, except

b.  As respects loss or damage to property in the states of Alaska, Puerto Rico and the US Virgin Islands resulting from the peril of Earthquake, this Insurer shall not be liable for loss to any unit of insurance covered hereunder unless such loss exceeds five percent (5%) of the value of such unit of insurance in accordance with the statement of values at the time when such loss shall happen.  In the event of loss involving two or more units of insurance for which a claim is submitted, the applicable percentage deductible herein shall apply jointly to such units of insurance.  A minimum deductible of $100,000 shall apply each occurrence.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein.

c.  As respects loss or damage to property in the states of Washington, Hawaii and the New Madrid Earthquake Zone resulting from the peril of Earthquake, this Insurer shall not be liable for loss to any unit of insurance covered hereunder unless such loss exceeds two percent (2%) of the value of such unit of insurance in accordance with the statement of values at the time when such loss shall happen.  In the event of loss involving two or more units of insurance for which a claim is submitted, the applicable percentage deductible herein shall apply jointly to such units of insurance.  A minimum deductible of $100,000 shall apply each occurrence.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein.

d.  As respects loss or damage to property in Florida, Hawaii, US Virgin Islands and Puerto Rico resulting from the peril of a Named Windstorm including resultant Storm Surge, this Insurer shall not be liable for loss to any unit of insurance covered hereunder unless such loss exceeds five percent (5%) of the value of such unit of insurance in accordance with the statement of values at the time when such loss shall happen.  In the event of loss involving two or more units of insurance for which a claim is submitted, the applicable percentage deductible herein shall apply jointly to such units of insurance.  A minimum deductible of $100,000 shall apply each occurrence.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein.

e.  For loss or damage to covered properties located in Texas through Virginia (excluding Florida, Hawaii, US Virgin Islands and Puerto Rico) in a Tier One county from the peril of a Named Windstorm including resultant Storm Surge, this Insurer shall not be liable for loss to any unit of insurance covered hereunder unless such loss exceeds three percent (3%) of the value of such unit of insurance in accordance with the statement of values at the time when such loss shall happen.  In the event of loss involving two or more units of insurance for which a claim is submitted, the applicable percentage deductible herein shall apply jointly to such units of insurance.  A minimum deductible of $100,000 shall apply each occurrence.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein.

ALW2015 9/30/2015

**APPENDIX 'B'**

f.  As respects loss or damage to property resulting from the peril of Flood, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $100,000. This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein, except

g.  As respects loss or damage to property wholly or partially within Zone D and the Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (FEMA) resulting from the peril of Flood, this policy shall be excess of maximum available limits under the NFIP at the time of loss (whether purchased or not) plus $100,000 as respects Time Element or other NFIP ineligible property.  Notwithstanding the preceding statement, if the NFIP maximum limit changes during an Insured's NFIP policy's coverage period, then the deductible will be the NFIP maximum available limits on the effective date of the NFIP policy, plus $100,000 as respects Time Element or other NFIP ineligible property.  This deductible shall not apply to loss by an ensuing peril not otherwise excluded herein.

h.  As respects loss or damage to property in the due course of inland Transit, all loss, damage, or expense arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $25,000.

i.  Waiting Period - With respect to Ingress/Egress, Civil Authority and Service Interruption, coverage is provided by this policy only if the period of interruption of the Insured's business exceeds 24 hours per location involved in the loss. Then coverage will apply excess of the appropriate policy deductible.

j.  Each of the following shall be considered a separate Unit of Insurance:

    i.   Each separate building or structure

    ii.  Contents in each separate building or structure

    iii. Property in the yard of each separate building or structure

    iv.  Annual Business Interruption value applying to each separate building or structure.

k.  Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

l.  Whenever mortgage or lease conditions require insurance protection without deductibles or with deductibles less than are provided herein, the Insurer agrees to make payment without consideration of the applicable deductible.  The Insured agrees to reimburse the Insurer for any payments so made within ten (10) days after payment of the loss.  This condition does not apply to the peril of "Earthquake", "Named Storm" including resultant Storm Surge or "Flood" when

4

ALW2015 9/30/2015

**APPENDIX 'B'**

property is wholly or partially within Zone D and any Special Flood Hazard Areas (SFHA).

m. The deductible amounts specified above shall not apply to general average contributions and salvage charges.

6. LOSS PAYABLE - Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

7. TERRITORY - This policy covers anywhere in the United States of America, its territories and possessions, including the District of Columbia and the Commonwealth of Puerto Rico, including whilst in due course of transit, as detailed in policy wording.

8. PROPERTY COVERED - Except as hereinafter excluded, this policy covers the interest of The Insured in all real and personal property owned, used, leased or intended for use by the Insured or in which the Insured may have an insurable interest, or for which the Insured may be responsible for the insurance, or real or personal property hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments.  In the event of loss or damage, this Insurer agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding a contract or lease to the contrary.

This policy is extended to include:

a. The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b. At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c. Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

d. Any interest of the Insured in the real and personal property of others and the Insured's liability imposed by law or assumed by contract for nonowned real and personal property, including the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and/or employees alleging physical loss or damage as insured against, even if such claim is groundless, false or fraudulent but the Insurer may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

9. PROPERTY EXCLUDED - This policy does not cover loss or damage to:

a. Money and securities; Jewelry, Precious Stones and Metals

ALW2015 9/30/2015

**APPENDIX 'B'**

    b.  Land, land values, except as insured under the "Pollutant Cleanup of Land and Water" clause.  This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements.  Land improvements as described hereunder include, but are not limited to, any alteration to the natural condition of the land by grading, filling, shoring, landscaping, excavation, earthen dikes or dams, irrigation or drainage systems, as well as additions to land such as pavements, roadways, ponds, golf courses or similar works;

    c.  Water; except water which is normally contained within any type of tank, piping system or other process equipment;

    d.  Growing crops, standing limber, and live animals not used for research;

    e.  Watercraft while afloat, aircraft, and motor vehicles licensed for highway use when not on the Insured's premises, (this exclusion shall not apply to contractor's equipment, nor to such property which constitutes stock or which is on exhibit or which is being repaired);

    f.  Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

10.  PROPERTY VALUATION - The basis of loss adjustment shall be as follows:

    a.  Valuable Papers & Records/Electronic Data Processing Media: the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

    b.  Raw materials and supplies: the replacement cost new.

    c.  Stock in process: The value of raw materials plus labor expended plus the proper proportion of overhead charges.

    d.  Finished stock and other merchandise for sale: The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

    e.  Real and personal property of others for which the Insured is liable: A valuation consistent with the liability of the Insured.

    f.  Electronic data processing equipment, production machinery & equipment: The cost to repair or replace new with like kind and quality.  In addition, the Insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function arid/or forming part of a program of system enhancement and/or more consistent with the Insured's technology strategy (without any reduction or offset for betterment) provided that such replacement can be accomplished without increasing the Insurer's liability.

**APPENDIX 'B'**

g.   Fine arts, at original cost to the Insured, per schedule, latest appraised value or current market value, all at the Insured's option.

h.   Leasing commissions insofar as they are unearned at the time of loss.  In addition, in the event leasing commissions are due and payable upon releasing of the property, the Insured will be entitled to the difference between re-leasing commission paid minus the leasing commission previously paid for the period when the property is re-leased until the original lease would have expired.

i.   Trees, shrubs and plants at covered at replacement cost with like kind and quality. Trees and shrubs, which can't be replaced with like kind and quality because of age, size or other prohibiting conditions may be replaced by one or more of the following methods at the Insured's option:

   i.   Immature trees and shrubs of like kind and quality, except their maturity;

   ii.   Immature trees and shrubs not of the same type but which have a faster growth rate;

   iii.   Other natural or man-made items to reasonably simulate the effect of the landscaping design.

j.   Other property not otherwise provided for, at full cost of repair or replacement cost new without deduction for depreciation determined as of the date of replacement.  If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Insurer shall not be liable for more than the greater of Fair Market Value immediately prior to the loss or Actual Cash Value (replacement cost less depreciation) of the property damaged or destroyed.  Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy.

k.   It is agreed that replacement cost includes all costs to repair or replace the damaged property with products of otherwise equivalent quality and function that are acceptable under the applicable LEED Green Building Rating System of the U.S. Green Building Council (USGBC) or the requirements of the Green Globes Assessment and Rating System of the Green Building Initiative or, in the event of total loss, to rebuild the building as green-certified including, but not limited to, alternative water and waste systems, green power generating equipment, vegetative roofs and/or the use of USGBC or Green Globes accredited professionals to oversee design and reconstruction, the cost of green building certification or recertification, green building registration, and/or costs to commission the building.

11.   BUSINESS INTERRUPTION - This policy shall cover the loss resulting from necessary interruption of business conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

ALW2015 9/30/2015

**APPENDIX 'B'**

   a.  In the event of such loss, damage or destruction this Insurer shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately before the loss. For the purposes of this insurance, "Gross Earnings" are defined as the sum of:

      i.  Net sales value of production from manufacturing operations, and net sales from Merchandising or Non-Manufacturing operations; and

      ii.  Other earnings derived from operations of the business,

LESS THAN THE COST OF:

      iii.  Raw Stock from which such production is derived;

      iv.  Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the services(s) sold by the Insured;

      v.  Merchandise sold, including packaging materials therefore; and

      vi.  Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

   b.  In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll, directly attributable to such research and development activities.

   c.  Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business:

      i.  by a complete or partial resumption of operation at a location owned by the same entity suffering the loss, whether damaged or not; or

      ii.  by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

   d.  EXPERIENCE OF THE BUSINESS - With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after

8

ALW2015 9/30/2015

**APPENDIX 'B'**

completion of the construction, erection, installation, or assembly.

e.  As respects coverage provided under the Gross Earnings clause of this policy, the insurer shall not be liable for any loss resulting from loss or damage to finished stock nor for the time required to reproduce said finished stock.

12.  EXTRA EXPENSE – This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a.  The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.  Extra expenses include expenses incurred to follow procedures recommended by the USGBC or the Green Building Initiative, including but not limited to costs to divert debris after a loss to recycling facilities if the debris can be recycled, the costs to purchase replacement power from a public utility until the Insured's power producing equipment is replaced and the costs to flush out reconstructed space with 100% outside air and new filtration media following reconstruction in a manner consistent with the procedures specified by the applicable LEED Green Building Rating System of the USGBC.

b.  In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

c.  As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

13.  This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy, even though such expense may exceed the amount by which the loss under this policy is thereby reduced.

14.  SOFT COSTS - This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

a.  The term "Soft Costs" shall include:

i.  Extra construction costs the Insured incurs to continue construction and meet contract dates;

ii.  Construction loan interest on money borrowed to finance construction or repair;

iii.  Realty taxes and other assessments on the construction site accruing during the

ALW2015 9/30/2015

**APPENDIX 'B'**

period of delay;

    iv.  Architect, engineering and consultant fees;

    v.  Insurance premiums;

    vi.  Advertising and promotional expenses which become necessary as a result of the covered loss;

    vii.  Accounting and attorney fees;

    viii.  Costs and commissions resulting from renegotiating leases which directly result from the covered loss.

b.  This Insurer shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed. As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

    i.  partial or complete resumption of construction, business or operations;

    ii.  making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

    iii.  making use of substitute facilities or services where practical; such reduction will be taken into account in arriving at the amount of such loss.

15.  Rental Value/Rental Income - This policy shall cover the actual loss sustained by the Insured resulting directly from the necessary untenability caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as covered herein.  Loss settlement shall not exceed the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

a.  If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

    i.  the total anticipated gross rental income of the described property as furnished and equipped by the insured, and

    ii.  the amount of all charges which are legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    iii.  the fair rental value of any portion of said property which is occupied by the Insured.

b.  If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefore) less such charges and expenses as do not necessarily continue.

ALW2015 9/30/2015

**APPENDIX 'B'**

    c.  Experience of the Business - With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

    d.  With respect to buildings or structures leased or rented by the Insured, this policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord. This policy will respond for rental expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by any peril covered under this policy. Such coverage will apply for all additional expenses incurred during the period of untenability or if the lease cannot be terminated until its expiration.

16.  Royalties - This policy shall cover the loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

    a.  Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

    b.  Resumption of Operations: The Insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Insurer.

    c.  Experience of the Business: In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

17.  Leasehold Interest: This policy covers:

    a.  The leasehold interest of the Insured as Lessee in excess of the rental value of the Insured's leased premises as of the date of loss over the actual rent payable (giving due consideration to rental and over-standard tenants improvements allowances and including any maintenance or operating charges paid by the Insured) during the unexpired term of the Insured's lease, whether the premises be occupied in whole or in part by the Insured or whether they be sublet to other tenants.

    b.  The leasehold interest of the Insured as Lessor in excess of the actual rental payable as of the date of loss over the rental value of the Lessee's leased premises

ALW2015 9/30/2015

**APPENDIX 'B'**

(giving due consideration to rental and over-standard tenant's improvement allowances and including any maintenance or operating charges paid by Lessee) during the unexpired term of the Lessee's lease.

c. If insured property is damaged by an insured peril during the policy period and the Insured's lease in canceled by a party, other than the Named Insured or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured property is located, then this policy is extended to cover the interest of the Insured as lessee or the interest of the Insured as lessor, whichever is applicable.

18. Leasing Commissions: This policy covers leasing commission insofar as they are unearned at the time of loss.  In addition, in the event leasing commissions are due and payable upon re-leasing of the property, the Insured will be entitled to the difference between re-leasing commission paid, minus the leasing commission previously paid for the period when the property is re-leased, until the original lease would have expired.

19. Loss Provisions Applicable to Time Element Coverage - The "Period of Indemnity" is defined as the length of time for which loss may be claimed, and shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy, subject to the following provisions:

a. The Period of Indemnity shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged including the increased time required to rebuild or repair using environmentally conscious property, materials and/ or systems and following procedures specified by the applicable LEED Green Building Rating System of the USGBC.

b. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly the Period of Restoration shall be determined as provided above but such determined length of time shall be applied and the loss hereunder calculated from the date that business operations would have begun had no damage or destruction occurred.

c. Extended Period of Indemnity - The Period of Indemnity shall include such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the date on which the liability of the Insurer for loss or damage would otherwise cease, and terminating no more than 730 days from said commencement date.

20. Extensions of Time Element Coverage: This policy, subject to all its provisions and without increasing the amount of said policy, insures against time element loss including rental income and extra expense resulting from direct physical loss or damage to or destruction by the perils insured against, to:

ALW2015 9/30/2015

**APPENDIX 'B'**

a. Any service provider's property including but not limited to, electrical equipment and systems, water, gas, steam, telephone or their respective transmission and distribution lines or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or within 5 statute miles of the Insured's premises. This coverage is extended to include loss or damage resulting from any accidental occurrence to property referenced in this clause. This coverage is extended to include loss or damage resulting from any accidental occurrence to property referenced in this clause.

b. property that directly or indirectly prevents a direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a direct receiver of goods and/or services from receiving the Insured's goods and/or services; such supplier or receiver shall not be an Insured under this policy. Coverage includes income which would have been earned from Property Management contracts which have been cancelled due to a covered peril. Coverage includes loss or damage to real and personal property not owned or operated by the Insured, located within 2 miles of the insured and which attracts business to that vicinity.

c. dams, reservoirs, or equipment connected, therewith the insured's premises, when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply.

d. the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against, access to real or personal property is prohibited by order of civil or military authority irrespective of whether the property of the Insured shall have been damaged.

e. the actual loss sustained for a period not to exceed thirty (30) consecutive days when, as a result of a peril insured against, ingress to or egress from real or personal property is thereby impaired or hindered irrespective of whether the property of the Insured shall have been damaged.

f. the actual loss sustained when a tenant's lease is cancelled by the tenant, acting under a valid condition of the lease, due to loss or damage to real or personal property caused by or resulting from an insured peril at an insured location. This provision does not limit coverage otherwise provided in this policy.

g. property, facilities or piping systems which prevents the Insured from discharging its outgoing effluence.

21. Inland Transit - This policy shall cover property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any

ALW2015 9/30/2015

**APPENDIX 'B'**

conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination. This insurance is extended to cover loss or damage to property:

    a.  sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

    b.  arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

    c.  occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

    d.  at the Insured's option, property which is incoming to the Insured.

The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor. With respect to shipments described under subparagraphs a) and d) above, this Insurer agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

    e.  The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

    f.  Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Insurer and the Insured.

22.  Account Receivable – Defined as:

    a.  All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

    b.  Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

    c.  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

    d.  Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card Insurer charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card Insurer.

When there is proof that a loss of records of accounts receivable has occurred but the

ALW2015 9/30/2015

**APPENDIX 'B'**

Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

e. the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

f. the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

23. BOILER & MACHINERY - This policy insures direct or indirect loss as covered elsewhere in this policy to insured property as a result of an Accident to an Object subject to the following definitions:

a. "Object" means any boiler, fired or unfired pressure vessel, refrigerating or air-conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

b. "Accident" means an accidental loss to an Object or a part thereof which manifests itself in physical damage that necessitates repair or replacement of the Object or part thereof.

c. "Hazardous Substance" means the additional expense incurred for cleanup, repair or replacement, or disposal of damaged, contaminated or polluted property as a result of an "Accident" which causes property to become damaged, contaminated or polluted by a substance declared hazardous to health by an authorized governmental agency. "Additional Expenses" means expenses incurred that would not have been incurred, had no substance hazardous to health been involved in the accident. This insurer shall not be liable for more than $2,500,000 per occurrence as respects Hazardous Substance.

d. "Ammonia Contamination" means spoilage to coverage property contaminated by ammonia. This Insurer shall not be liable for more than $2,500,000 per occurrence as respects Ammonia Contamination.

e. "Expediting Expense" means the increased cost to make temporary repairs or expedite permanent repair or replacement in order to restore business operations. This Insurer shall not be liable for more than $25,000,000 per occurrence as

ALW2015 9/30/2015

**APPENDIX 'B'**

respects Expediting Expense.

24. PERILS INSURED AGAINST - This policy insures against all risks of direct physical loss of or damage to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

25. PERILS EXCLUDED - This policy does not insure:

a. infidelity or dishonesty of the Insured or of the Insured's employees. A willful act of malicious intent shall not be deemed to be an act of infidelity. This exclusion shall not apply to loss or damage resulting from the Insured voluntarily parting with title or possession of any property if induced to do so by any fraudulent trick, scheme, device or false pretense;

b. against the cost of making good defective design or specifications, faulty material design or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material or faulty workmanship;

c. against ordinary wear and tear or gradual deterioration, rust, corrosion, erosion or loss of weight (except for an accident to an Object covered under section 23 of this policy) unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage. However, if an accident to an object ensues then this policy shall also cover the normal actual wear and tear or gradual deterioration to the damaged object;

d. against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage;

e. against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

f. goods missing at stock-taking in respect of which no claim has been previously reported unless the loss can be proved by the Insured to be due to a peril not otherwise excluded by this insurance;

g. against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy;

except if a covered peril ensues, liability is specifically assumed for direct loss by such ensuing peril but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination. This Insurer shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured

ALW2015 9/30/2015

**APPENDIX 'B'**

premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

h.  against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or by military, naval, or air forces; or by any agent of any such government, power, authority, or forces;

   i.   against any weapon employing atomic fission or fusion;

   ii.  against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

   iii. against seizure or destruction by order of a public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against or under this policy;

   iv.  against risks of contraband or illegal trade;

   v.   against confiscation, nationalization and expropriation.

Notwithstanding the above provisions, this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon or war employing atomic fission or fusion whether in time of peace or war.

i.  loss or damage caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants unless the release, discharge, dispersal, seepage, migration, or escape is caused by a peril not otherwise excluded herein. However, if a peril not otherwise excluded herein ensues due to the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants, such ensuing loss or damage shall be covered. This exclusion does not apply to overflow or backup of sewers, drains, septic systems, or plumbing devices whether above or below ground.

j.  Disease, Infestation, Insect, Animal or Vermin Damage

k.  Earthquake in the State of California.

**APPENDIX 'B'**

l.   Normal Sinking, Gradual Cracking, Shrinking or Bulging or Expansion.

Exclusion b), c), d) and e) do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly. Exclusion b), c) and d) do not apply to property in transit.

26.  DEFINITIONS

a.  The term "Earthquake" as used in this policy shall mean loss or damage caused by or resulting from a series of tectonic vibrations induced in the earth's crust by the abrupt rupture and rebound of rocks in which elastic strain has been slowly accumulating (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy).

b.  The term "Flood" as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether wind driven or not including Storm Surge (but shall not apply to damage caused by an ensuing peril not otherwise excluded from this policy)

c.  The term "occurrence" is defined as follows:

i.   Except as hereinafter defined, "loss occurrence" shall mean an accident or occurrence or series of accidents or occurrences arising out of one event.

ii.  Each loss occurrence which involves the perils of tornado, windstorm, cyclone, hurricane or hail shall include all loss or damage wherever occurring occasioned by these perils which arise out of one atmospheric disturbance during a continuous period of 168 hours.

iii. Each loss occurrence which involves Flood shall mean all losses, wherever occurring, which arise between the time of movement of water into, onto, or over the property insured hereunder and the receding of the same, regardless of the period of time so embraced; EXCEPT, no Loss Occurrence shall be deemed to commence earlier than the date and time of the happening of the first recorded individual loss to the Insured in that occurrence during the Period of Insurance, nor extended to beyond thirty days after the expiry of this Policy

iv.  Each loss occurrence which involves the peril of earthquake, a series of earthquakes shall include all losses or damage sustained during a continuous period of 168 hours.

v.   Each loss occurrence which involves the perils of theft, vandalism, malicious mischief or riot/civil commotion shall include the sum total of all losses of property and/or interests insured herein resulting from one or more fraudulent or dishonest acts committed by a person(s) acting alone or in collusion with others.

ALW2015 9/30/2015

**APPENDIX 'B'**

    vi. The Insured shall have the right to elect the moment from which the time periods referred to in ii), iii), and iv) above shall be deemed to have commenced, however no elected period of time shall commence within any previous occurrence.

    vii. Should the time period in ii), iii), and iv) above extend beyond expiration or cancellation date of this policy and commence prior to the expiration or cancellation date, this Insurer shall be liable as is such period fell entirely within the term of this policy.

d. "Raw Stock" – Materials and supplies in the state in which the Insured receives it for conversion by the Insured into Finished Stock, including supplies consumed in such conversion or in the service rendered by the Insured.

e. "Stock in Process" – Raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture by on behalf of the Insured but which has not become Finished Stock.

f. "Finished Stock" - Stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

g. "Merchandise" - Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

h. "Normal" - The condition that would have existed had no loss occurred.

i. "Improvements and Betterments" - Fixtures, alterations, installations or additions comprising a part of the described building and made or acquired at the expense of the Insured, but which are not legally subject to removal by the insured.

j. "Valuable papers and records" - Written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents and manuscripts.

k. "Electronic Data Processing Media" - All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles.

l. "Securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets.

m. "Fine Arts" - Shall include but not be limited to bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, galley proofs, original records, sculptures, carvings and similar property.

n. "Architect and Engineering Fees" - Any cost associated with the preparation of plans, supervision of and approval for the repair or replacement of damaged or

ALW2015 9/30/2015

**APPENDIX 'B'**

destroyed property.

o. "Tier One County" - means all locations situated within the counties specified as follows: <u>Texas</u> - Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleburg, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy; <u>Louisiana</u> - Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Mary, St. Bernard, St Tammany, Terrebonne, Vermilion; <u>Mississippi</u> - Hancock, Harrison, Jackson; <u>Alabama</u> - Baldwin, Mobile; <u>Florida</u> - entire state; <u>Puerto Rico</u> - entire territory; <u>US Virgin Islands</u> - entire territory; <u>Georgia</u> - Bryan, Camden, Chatham, Glynn, Liberty, McIntosh; <u>South Carolina</u> - Beaufort, Berkley, Charleston, Colleton, Georgetown, Horry, Jasper; <u>North Carolina</u> - Beaufort, Brunswick, Carteret, Craven, Dare, Hyde, New Hanover, Onslow, Pamlico, Pender; <u>Virginia</u> - Accomack, Northampton, Virginia Beach City, Chesapeake, Gloucester, Hampton City, Lancaster, Mathews, Middlesex, Newport News, Norfolk City, Northumberland, Poquoson City, Portsmouth City, Suffolk City, York; <u>Hawaii</u> - entire state.

p. "Named Storm"- A storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm.

q. "New Madrid Earthquake Zone" includes all locations in the following counties:

   i. <u>Arkansas</u> - Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St Francis, White, and Woodruff.

   ii. <u>Illinois</u> – Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saint Clair, Saline, Sangamon, Scott, Shelby, Union, Wabash, Washington, Wayne, White, and Williamson.

   iii. <u>Indiana</u> - Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, and Warrick.

   iv. <u>Kentucky</u>- Ballard, Breckenridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, and Webster.

   v. <u>Mississippi</u> - Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, and Yazoo.

20

ALW2015 9/30/2015

**APPENDIX 'B'**

    vi. <u>Missouri</u> - Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Mars, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, St. Charles, St. Francois, Ste. Genevieve, St. Louis, St. Louis City, Scott, Shannon, Stoddard, Texas, Warren Washington, and Wayne.

    vii. <u>Tennessee</u> - Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, and Weakley.

27. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES - This policy covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed including loss of fire extinguishing materials expended resulting from a peril insured.

28. LIBERALIZATION CLAUSE - Notwithstanding anything contained herein to the contrary, the coverage provided by this policy shall not be construed to be more restrictive than the coverage provided by the standardized forms filed in various states by the Insurance Services Office.

29. SEVERABILITY OF INTERESTS - The inclusion herein of more than one person or organization, as Insured, shall not operate to increase the limit of the Insurer's liability (except for sublimits which specifically state they apply per occurrence per Insured) nor the deductible amounts to be borne by the Insured.  Except with respect to limits of liability and deductible amounts, the terms of this policy shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization.

30. DEBRIS REMOVAL - This policy covers the cost of removal of debris of property covered hereunder including the cost of removal of debris of property not insured hereunder from the premises of the Insured resulting from a peril insured against. Coverage includes the cost to recycle debris, including transportation expenses, following a covered loss. Except as otherwise provided for elsewhere in this policy, this policy does not cover the cost to extract contaminants or pollutants from land or water, nor does it cover the cost to remove, restore or replace contaminated or polluted land or water.  If at the time insured property is contaminated as a direct result of physical damage insured against by this policy there is in force any law or ordinance regulating contamination, including but not limited to pollution, then this policy shall cover, as a result of the enforcement of such law or ordinance, the increased cost of decontamination and debris removal of such property in a manner to satisfy such law or ordinance. As respects Time Element coverage(s), this policy is extended to include such time as is necessary and reasonable with the exercise of due

ALW2015 9/30/2015

**APPENDIX 'B'**

diligence and dispatch to decontaminate such property in a manner to satisfy such law or ordinance.

31. DEMOLITION AND INCREASED COST OF CONSTRUCTION - In the event of loss or damage under this policy that causes the enforcement of or compliance with any law, regulation, rule or ordinance in force at time of loss regulating the construction, repair or use of property or establishing zoning or land use laws, this Insurer shall be liable for:

   a. COVERAGE A - the loss in value of the undamaged portion of the property as a consequence of the enforcement of or compliance with any law or ordinance that requires demolition of undamaged parts of the same property;

   b. COVERAGE B - the cost to demolish and clear the site of undamaged parts of the same property;

   c. COVERAGE C - the increased cost to repair, remodel or reconstruct damaged and undamaged property on the same or another site, including the cost of excavations, grading, backfilling and filling, the repair or reconstruction of the building foundation, the pilings, and the underground pipes, flues and drains when the increased cost is a consequence of the enforcement of or compliance with any law, regulation, rule or ordinance. These costs are limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair, remodel or reconstruction of the damaged property on the same site. This Insurer shall not be liable for any increased cost of repair or reconstruction loss unless the damaged property is actually rebuilt or replaced;

   d. Any increase in loss including but not limited to Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law, regulation, rule or ordinance.

The Insurer will also pay the fair market value as determined immediately prior to the loss of that portion of any property (ies) which cannot be replaced as a result of a loss insured under this policy and resulting from enforcement of any law, rule, regulation or ordinance of any governmental or quasi-governmental authority regulating the construction or repair of buildings or structures, or establishing zoning or land use requirements. Fair Market Value (FMV) is defined as the Market Value of the Real Property at time and place of loss. The determination of Fair Market Value shall be by an independent appraiser agreed upon by the Insured and the Insurer.

   e. In the event of a covered loss to a Certified Green Building, this Insurer will pay the costs to repair or replace lost or damaged property in accordance with the terms and conditions of this policy. However, if LEED or Green Globes certification requirements (whichever applies to the Certified Green Building) for the same level of certification that the Certified Green Building had prior to the loss or damage have been upgraded, then the Insurer will also pay the reasonable and necessary additional costs to upgrade the covered, damaged Certified Green Building

22

ALW2015 9/30/2015

**APPENDIX 'B'**

components to meet the current certification requirements in order to maintain the same level of certification the certified Green Building had prior to the loss or damage.

32. EXPEDITING EXPENSE - This policy covers the extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

33. CONTRIBUTING INSURANCE - Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

34. EXCESS INSURANCE - Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

35. UNDERLYING INSURANCE - Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. Should the amount of loss payable under such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then no deductible shall apply hereunder and that portion which exceeds such a deductible amount shall be considered "other insurance". Should the amount of loss payable under such underlying insurance be less than the largest deductible amount which would apply in the event of loss under this policy, then the deductible amount to be deducted hereunder shall be the difference between the amount to be paid under such underlying insurance and the largest deductible amount which would apply in the event of loss under this policy.

36. OTHER INSURANCE - Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Insurer shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

37. SUBROGATION - Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant or guest of the Insured. In the event of any payment under this policy, this Insurer shall be subrogated to the extent of such payment to all the

23

ALW2015 9/30/2015

**APPENDIX 'B'**

Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Insurer to secure such right. The Insurer will act in concert with all other interests concerned, i.e., the Insured and any other Insurer(s) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

38. SALVAGE AND RECOVERIES - All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If proceeds from subrogation are recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Insurer(s) participating in the payment of any loss, in the proportion of their respective interests.

39. CONTROL OF DAMAGED MERCHANDISE - The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Insurer any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured, using reasonable discretion, shall be the sole judge as to whether production or EDP equipment and/or media are damaged and unusable. This insurer shall be allowed to dispose of as salvage, any nonproprietary property deemed unusable by the Insured.

40. BRAND OR TRADEMARK - In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carriers or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Insurer's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

41. ERRORS OR OMISSIONS - Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

42. NOTICE OF LOSS - As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to the retail broker representative for transmission to Engle Martin, the designated loss adjuster and to

ALW2015 9/30/2015

## APPENDIX 'B'

this Insurer.

43. DESIGNATED LOSS ADJUSTER - It is understood and agreed that each and every loss will be adjusted by Engle Martin & Associates, Inc., Inc., Attn: Vincent P. Eckles 1411 W. 190th Street, Suite #460, Gardena, CA 90248.

44. PROOF OF LOSS - Proof of loss is required as soon as practicable following the Insurer's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with the Insurer prior to the Insurer's request. It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained.

45. PARTIAL PAYMENT OF LOSS - In the event of a loss covered by this policy, it is understood and agreed that the Insurer shall allow a partial payment(s) of claim subject to the policy provisions and normal Insurer adjustment process.

46. PAYMENT OF LOSS - All adjusted claims shall be due and payable no later than thirty (30) days alter presentation and acceptance of proofs of loss by the Insured or its appointed representative.

47. LOSS ADJUSTMENT EXPENSES - This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount of loss sustained, and the amount of loss payable under this policy. Such expenses shall not exceed $1,000,000 in any one occurrence per Insured. Coverage does not include fees for Independent Adjusters, Public Adjusters and/or Attorneys.

48. APPRAISAL - If the Insured and this Insurer fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Insurer made within 60 days after receipt of proof of loss by the Insurer, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Insurer, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Insurer shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

49. CONSEQUENTIAL LOSS - This policy insures against consequential loss including

ALW2015 9/30/2015

**APPENDIX 'B'**

spoilage to real and personal property as insured hereunder caused by change of temperature or humidity or by interruption of any service including but not limited to power, heat, air conditioning, or refrigeration resulting from a peril insured against.

50. EMERGENCY VACATING EXPENSE - This policy is extended to cover the reasonable expenses to evacuate occupants incurred by the Insured when an authorized governmental agency or other similar authority orders the emergency evacuation of an insured building as a result of an impending insured peril that threatens imminent physical danger or loss of life to the occupants of the building.

51. PAIR AND SET - In the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Insurer.

52. CONSEQUENTIAL REDUCTION IN VALUE - This policy covers the reduction in value of insured components or parts of components or parts of products or the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to loss or damage insured against by this Policy to other insured components or parts of products.

53. Acquisition Costs: The Insured will be reimbursed up to $100,000 per occurrence for the soil tests, structural studies, marketing studies, architectural work, financing costs including but not limited to loan commission fees and interest expenses, and any other costs associated with the intended acquisition of a property or properties in case of a loss to the property(ies) which causes termination of the acquisition of the property(ies).

54. TRIPLE NET LEASE EXCESS COVERAGE –

a. Coverage is amended to include the following: Business real property you own and lease to others when, at the time of covered loss or damage, the real property insurance required to be provided by the lessee thereof pursuant to a written lease agreement does not protect your interest in that property because such insurance:

i. is not in effect by reasons of the lessee's failure to obtain such insurance; or

ii. is not in effect by reason of cancellation, non-renewal or other form of termination of such insurance; or

iii. does not fully cover such loss or damage by reason of Limit of Insurance less than that required by the written lease agreement; or

iv. does not cover such loss or damage by reason of coverage less than that required by the written lease agreement; or

v. does not fully cover such loss or damage by reason of lessee's failure to comply with a condition of that insurance.

**APPENDIX 'B'**

This coverage only applies to the difference between the lessee's real property insurance and the real property insurance required by the written lease agreement. In no event will this coverage extend beyond the lesser of the real property insurance required by the written lease agreement or the business real property insurance provided by this policy. The loss or damage must be a result of a covered cause of loss that applies to your Real Property. In no event will we pay for loss or damage caused directly or indirectly by flood or earthquake.

   b.  Newly Leased Property

Coverage provided under this Endorsement is extended to cover real property, for up to 120 days, you first lease under a written lease agreement entered into during the policy period. This coverage ends 120 days from the date you lease the property to others under a written lease agreement, on the date you report the value of the property to us, or on the date the policy expires if not renewed with us, whichever occurs first.

This coverage does not apply to: (1) Loss or damage caused directly or indirectly by flood or earthquake; or (2) Property which is otherwise insured under this policy.

   c.  Other Insurance Clause - If there is other valid and collectible specific, non-contingent, insurance covering the same loss or damage covered by this endorsement, we will only pay the amount of covered loss or damage in excess of the amount due from that other insurance, but never more than our applicable Limit of Insurance.

   d.  Additional Conditions - The following conditions apply:

      i.  You agree to require lessees to furnish you with evidence of the real property insurance they have purchased to protect your interest in the property they have leased from you pursuant to a written lease agreement. This evidence must be in the form of a Certificate of Insurance which includes:

         1.  Address of the subject property;

         2.  Description of the business real property coverage applicable to the subject property that satisfies the real property insurance requirements of the written lease agreement;

         3.  Business real property Limit of Insurance applicable to the subject property

         4.  that is equal to the business real property Limit of Insurance required by your written lease agreement; and

      ii.  You agree to maintain on file and keep current these Certificates of Insurance.

      iii.  You must be named as Additional Insured with respect to such insurance applicable to the subject property and provide us with evidence thereof on request.

ALW2015 9/30/2015

**APPENDIX 'B'**

    iv.  You agree to keep an accurate, ongoing record (including square foot area and value) of all business real property which is subject of a written lease agreement and provide us with a current listing of such business real property at our request.

Additional Definition: Written Lease Agreement, as used in this Extension, means any written agreement under which you agree to lease business real properly you own or manage to a lessee which has a provision obligating that lessee to purchase business real property insurance protecting your interest in that property.

55.  ADVERSE PUBLICITY: This Insurer shall be liable for the actual loss of income sustained by the Insured directly by adverse publicity of an occurrence or event which is detrimental to the business or operations of the Insured. This extension is subject to a $250,000 sublimit per occurrence.

56.  LEASEHOLD IMPROVEMENTS & BETTERMENTS- This policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's Lease is cancelled by the Lessor or a tenant's Lease is cancelled by the tenant, acting under a valid condition of the Lease due to direct physical loss or damage to building or personal property caused by or resulting from a covered peril at an insured location. No sublimit of liability applies to this additional coverage, but in no event will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the leasehold interest, if any. In addition, if insured property is (1) damaged by a covered peril during the policy period and (2) the Insured's lease is canceled by a party, other than the Insured or an entity with any common ownership of the named insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed insured property is located, then this policy is extended to cover the additional costs of tenants improvements and betterments installed following such loss, not to exceed $2,000,000 per policy year per Insured.

57.  COINSURANCE WAIVER - This policy is not subject to any coinsurance or average clause.

58.  VALUES - The values declared to the Insurer at the inception of the policy are for premium development purposes only and shall not limit the coverage provided by this policy.

59.  ALTERATIONS AND USE CLAUSE - Permission is granted to the insured to cease operations or for buildings to remain vacant and/or unoccupied without limit of time, for increased hazards and for any change in occupancy or use, and to make alterations, repairs and additions to any existing building and to construct and occupy new buildings/ structures.

60.  ASSISTANCE AND COOPERATION OF THE INSURED - The Insured shall cooperate with this Insurer and, upon this Insurer's request and expense, shall attend hearings

ALW2015 9/30/2015

**APPENDIX 'B'**

and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

61. SUE AND LABOR - In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Insurer in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Insurer shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

62. REINSTATEMENT - With the exception of loss subject to annual aggregate limits as noted herein, no loss hereunder shall reduce the amount of this policy.

63. SUIT AGAINST THE INSURER - No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have reasonably complied with all the requirements of this policy. The Insurer agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred if commenced within the time prescribed therefor in the statutes of the State of California.

64. CERTIFICATES OF INSURANCE - It is understood and agreed that the retailer is authorized to issue certificates of insurance naming additional insureds, interests and/or loss payees and/or mortgagees and others for their respective rights and interests in accordance with the terms and conditions of the contract including notice of cancellation requirements, subject always to the terms, conditions, and limits of liability of this policy. The Insurer agrees to waive the issuance of formal Insurer endorsements in respect of such interests.

65. CONFLICTING PROVISIONS - The terms and conditions of this manuscript form and endorsements attached thereto shall supersede those of the preprinted policy jacket and forms to which it is attached where in conflict.

66. NOTIFICATION CLAUSE - All notices or communications concerning this policy shall be addressed to the offices of R-T Specialty, LLC at 477 South Rosemary, Suite 215, West Palm Beach, FL 33401. All such notices shall be sent via registered mail.

67. CANCELLATION/NON RENEWAL - This policy maybe canceled at any time at the request of the Insured or it may be canceled or non-renewed by the Insurer by mailing to the Insured and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than ninety (90) days thereafter or ten (10) days in the event of non-payment of premium, such cancellation or non-renewal shall be effective. Unearned Premium shall be calculated on a pro-rata basis if the Insurer cancels and

**APPENDIX 'B'**

on a short rate basis if the insured cancels.  The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall be come the end of the policy period. Delivery of such written notice either by the Insured or by the Insurer shall be equivalent to mailing. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

In the event that a premium finance Insurer (on behalf of any individual insured) makes a request to cancel coverage for non-payment of premium, such request shall be treated as a request to delete that individual insured from coverage.

68.   TITLES OF PARAGRAPHS - The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

69.   JOINT LOSS AGREEMENT. In the event of damage to or destruction of property at a location designated in this "fire" policy and also designated in a "Difference in Conditions/Earthquake" insurance policy and there is disagreement between the insurers with respect to whether such damage or destruction was caused by a peril insured against by this policy or by a peril insured against by such "Difference in Conditions/ Earthquake" insurance policy, or the extent of participation of this policy and of such "Difference in Conditions/Earthquake" insurance policy in a loss which is insured against, partially or wholly, by any one or all of said policies, this Insurer shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than this Insurer would have paid if there had been no "Difference in Conditions/Earthquake" insurance policy in effect, subject to the following conditions:

a.   The amount of the loss which is in disagreement is limited to the minimum amount remaining payable under either this policy or such "Difference in Conditions/Earthquake" policy(ies) after making provision for any undisputed claims payable under said policies and after the amount of the loss is agreed upon by the Insured and the Insurers;

b.   The "Difference in Conditions/ Earthquake" insurer(s) shall simultaneously pay to the Insured one-half of said amount which is in disagreement,

c.   The payments by the insurers hereunder and acceptance of same by the Insured signify the agreement of the insurers to submit to and proceed with arbitration within 90 days of such payments. The arbitrators shall be three in number, one of whom shall be appointed by this policy's insurer and one of whom shall be appointed by the "Difference in Conditions/Earthquake" insurer(s) and the third appointed by consent of the other two, and the decision by the arbitration shall be binding on the insurers and that judgment upon such award may be entered in any court of competent jurisdiction.

ALW2015 9/30/2015

**APPENDIX 'B'**

70. MORTGAGE CLAUSE – As respects Real Property only, loss, if any, under this policy shall be payable to the mortgagee (or trustee) as its interest may appear under all present or future mortgages upon the property herein insured in which the aforesaid may have an interest as mortgagee (or trustee) in order or precedence of mortgages, and this insurance as to the interest of said mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall, notify the Insurer of any changes of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagees (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The Insurer reserves the right to cancel this policy at any time as provided by its terms, and in such case, this policy shall continue in force for the benefit only of the mortgagee (or trustee) for an additional thirty (30) days. Whenever the Insurer shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Insurer shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgagee debt, or may at their option pay to the mortgagee (or trustee) the whole principal due or to grow on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

71. JURISDICTION AND SUIT - It is hereby understood and agreed that in the event of the failure of the Insurer to pay an amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court. In any suit instituted against it under this, the Insurer will abide by the final decision of such court or any appellate court in the event of an appeal.

72. SPECIAL PERILS BUSINESS INTERRUPTION - This policy shall cover the Actual Loss Sustained resulting from necessary interruption of business conducted by the Insured caused by any of the perils listed below:

   a. POLLUTION - The release and/or discovery of pollutants in the ocean within 5 miles radius of the Insured's premises that results in the mandatory closure of beaches by the coastal commission, environmental or government agency. Any loss resulting from this event would be subject to a 72 hour waiting period.

ALW2015 9/30/2015

**APPENDIX 'B'**

    b.  MURDER, SUICIDE, or RAPE - Coverage is given subject to a police report being filed within 48 hours of a murder, suicide, or rape at the Insured's location and the subsequent cancellation of special events and/or rooms/lease.

    c.  CONTAGIOUS DISEASE – This policy is extended to insure loss as Insured hereunder when there is an interruption or interference with the business of the insured as a consequence of an order by a competent public authority due to:

        i.  Infectious or contagious disease manifested by any person while on the premises of the insured;

        ii.  Injury or illness sustained by any person arising from or traceable to a foreign or injurious matter in food and drink provided on the premises of the Insured or the threat thereof;

        iii.  the existence or threat of hazardous conditions either actual or suspected at the premises of the Insured.

73.  LOCKS AND KEYS - This policy is extended to cover the cost the Insured pays for replacing locks to safes, alarms and doors following theft or loss of keys.

74.  POLLUTANT CLEAN UP AND REMOVAL - This policy is extended to cover the expense actually incurred by the Insured to decontaminate, clean up and/or remove pollutants from land, water or air including resultant time element loss if the release, discharge, or dispersal of the pollutants results from any loss or damage as covered herein. Such expenses shall not exceed $500,000 in any one policy year per Insured.

75.  Reward Extension ($50,000 sublimit applies per occurrence)– This policy is extended to cover payment of any reward offered on the Insured's behalf for information that leads to conviction of the perpetuator(s) of arson (fire) and/or theft to insured property that sustains physical loss or damage insured by this policy.

76.  Tenant Relocation and Move-Back Expense ($250,000 sublimit applies per occurrence per insured): This policy covers moving costs incurred by the insured with respect to relocating and moving tenants who temporarily vacate a covered building due to loss or damage from a peril insured against, including when statutorily required. Covered moving costs include packing, insuring and transporting tenants' property, reestablishing utility services (less refunds for discontinued service), assembling and setting up tenants' fixtures and equipment, unpacking and reshelving tenants' stock and supplies, and costs of rent abatement offered to the tenant(s) as an incentive to reoccupy the premises.

77.  Communicable Disease Extra Expense ($100,000 sublimit applies per occurrence): This policy covers the extra expense the Insured incurs due to a communicable disease event occurring at covered premises. Communicable disease event means that a Public Health Authority has ordered that a covered premises be evacuated and disinfected due to the outbreak of a communicable disease at the covered premises.

ALW2015 9/30/2015

**APPENDIX 'B'**

Communicable disease means any disease caused by a biological agent that is transmitted directly or indirectly from one individual to another.

78. Realty Tax – Increased Assessment ($50,000 sublimit applies per occurrence per insured): This policy covers the additional amount of the realty tax assessment attributable the construction, repair, rebuilding or reconstruction following loss or damage from an insured peril to covered real property. The insurer will pay for such increased realty tax assessment if it is assessed up to one year following the end of the period of indemnity.

79. Crisis Management Coverage Extension ($100,000 sublimit applies per occurrence) – This policy covers communications/public relations cost, loss of income, extra expense and post crisis event expenses resulting from a Covered Crisis Event. Covered Crisis Event means (a) violent acts on the Insured's property, (b) contamination, including communicable disease, on the insured property, (c) contaminated food served at the covered premises, (d) the following felonies whether committed, attempted or threatened on the Insured's premises: child abduction/kidnapping; stalking of an employee, tenant or customer; sexual assault; criminal use of a firearm. Coverage is limited to 60 consecutive days after a Covered Crisis Event. Post crisis event expenses are limited to $5,000 per person and cover reasonable expenses for medical treatment, psychological counseling or other mental health services (including related travel) incurred by individuals who were physically on the covered premises at the time the Covered Crisis Event occurred, the need of which arises out of a Covered Crisis Event. Post crisis event expense also means funeral expense for the burial of individuals (including employees) who were physically on the covered premises at the time the Covered Crisis Event Occurred and die as a result of the Covered Crisis Event, and for travel expenses for the deceased individual's family(ies) to attend such funeral(s).  No deductible applies to this coverage.

80. Mold - This policy shall insure any loss, damage, or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expenses, rental income and business interruption. Such loss is subject to a $5,000,000 aggregate per insured limit.

81. Additional Required Property Management Fees ($250,000 sublimit applies per occurrence per Insured) - It is agreed that this policy covers property management fees required by contract due to non-routine maintenance or repairs following a covered loss.

82. Computer Virus and Denial of Access ($50,000 sublimit applies per occurrence) – This policy will pay for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly form any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time

ALW2015 9/30/2015

**APPENDIX 'B'**

or in any sequence:

a.  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort or delete any part of the system or disrupt its normal operation in connection with any of the following, whether owned by the Insured or others: data processing equipment, software, data or media; information repository; hardware or software based computer operating system; microprocessors; integrated circuits; computer networks; website service; or any other electronic equipment, computerized equipment or similar device.

b.  A change in the functionality, availability, operation, use of, accessibility to or operation of any other of the items described in a. above.

ALW2015 9/30/2015

**APPENDIX 'B'**

Endorsement # REAPA1

Effective Date: September 30, 2015

Named Insured: The Members of Real Estate America Property Association, Inc.

Lead Insurer: Certain Underwriters of Lloyds of London

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER REAPA – PROPERTY INSURANCE PROGRAM POLICY.

In consideration of the premium charged, it is understood and agreed that losses exceeding $25,000 per occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $25,000.

Losses excess of this $25,000 erode a $1,000,000 in the annual aggregate underlying limit hereinafter called "Aggregate Policy").  The erosion of the Aggregate Policy is managed by the Program Manager and the details of the erosion calculations are communicated to the TPA from time to time.

Upon erosion of the Aggregate Policy a maintenance deductible of $25,000 per occurrence shall apply.

The perils of Earthquake, Flood and Named Windstorm including Storm Surge shall not contribute to the erosion of the Aggregate Policy.

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

## APPENDIX 'B'

ENDORSEMENT NO. REAPA2

Named Insured:          The Members of Real Estate America Property Association, Inc.

Lead Insurer:            Certain Underwriters of Lloyds of London
                         Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE
MASTER ALL RISK PROPERTY INSURANCE POLICY.

MEMBER SPECIAL CONDITIONS

1.  Named Insured: Vukota Capital Management
    a.  Mailing Address: 1800 Billings Street, Aurora, CO 80011
    b.  Member Policy ID: RW001977
    c.  Effective Date: 7/1/2016
    d.  Expiration Date: 7/1/2017
    e.  Binding Total Insurable Values (TIV): $119,600,043
    f.  Locations Insured: As per SOV on file with R-T Specialty and reported to insurers on
        bordereau
    g.  Allocated Premium: As per invoice

Special Terms & Conditions:
None.

ALW2015 9/30/2015

## APPENDIX 'B'

ENDORSEMENT NO. REAPA3

Named Insured:        The Members of Real Estate America Property Association, Inc.

Lead Insurer:         Certain Underwriters of Lloyds of London
                      Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER ALL RISK PROPERTY INSURANCE POLICY.

MEP CONDITIONS

For properties located in "Tier One" or Tier Two Counties, the following Minimum Earned Premium (MEP) conditions apply when the Insured removes a location for any reason or reduces the amount of insurance on any one location. This condition applies when coverage existed during the period of June 1st to November 30th. The Unearned Premium is the location premium times the Unearned Factor noted below:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20.00% |
| 181-210 | 15.00% |
| 211-240 | 10.00% |
| 241-270 | 7.50% |
| 271-300 | 5.00% |
| 301-330 | 2.50% |
| 331 or more | 0.00% |

1. 100% Fully Earned Premium - For properties located in the State of Florida or Louisiana
2. 35% Minimum Earned - All other locations

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

## APPENDIX 'B'

ENDORSEMENT NO. REAPA4

Named Insured:         The Members of Real Estate America Property Association, Inc.

Lead Insurer:          Certain Underwriters of Lloyds of London
                       Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER ALL RISK PROPERTY INSURANCE POLICY.

R-T SPECIALTY AND ASSIGNED THIRD PARTY ADJUSTER CLAIMS HANDLING AND REPORTING

Engle Martin is the assigned Third Party Adjuster [hereafter "TPA"] and will adjust all claims for loss or damage under this Policy on behalf of the Insurers.

Based on the Lead Insurer agreed Time & Expense cost schedule, claims related expenses by the TPA plus the reasonable cost of:

1.  consultant(s)/experts retained by the TPA, (at their discretion and only when necessary to adjust a loss);
2.  Appraisal and legal expenses as described within the policy; and
3.  Subrogation

TPA Settlement Authority:

1.  Insurers grant the TPA a settlement authority of $100,000 each and every loss excess of an Insured's deductibles. All pertinent reports, documentation and paperwork will be forwarded to the Insurers within 15 days after settlement.
2.  The settlement authority does not extend to "Without Prejudice" or "Ex-gratia" settlements, or any coverage disputes which must be referred to Insurers for individual handling.
3.  The TPA does not have authority to deny coverage unless instructed to do so by the Insurers.
4.  TPA will report to Insurers as soon as possible for review and discussion if TPA is in continued dispute with an insured over coverage.
5.  TPA will report to Insurers as soon as possible any claim where there is suspicion of fraud, arson or any other criminal activity by the Insured.
6.  Any claim which may, or does, result in litigation and/or complaint to a regulatory authority will be reported to the Insurers as soon as possible.
7.  Losses excess of TPA authority are to be handled individually, i.e. adjusters reports are sent to Insurers. Insurers are to direct the progress of these claims. All other claims are to be reported via the monthly bordereaux.
8.  Losses in excess of TPA authority (or any loss specified by Insurers) are to be collected on an individual basis.
9.  Insurers agree to abide by the State of California Fair Claims Practices Act.
10. TPA has the authority to retain and assign independent adjusters on all claims on behalf of the Insurers. TPA also has the authority to retain independent experts, such as engineers, to help determine cause of loss or assist in quantum control.
11. A Proof of Loss will be secured as per the lead Insurers' or TPA's guidelines. Insurers will accept the use of a Master Proof to conclude loss adjustments.

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

## APPENDIX 'B'

ENDORSEMENT NO. REAPA5

Named Insured:          The Members of Real Estate America Property Association, Inc.

Lead Insurer:            Certain Underwriters of Lloyds of London
                         Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE
MASTER ALL RISK PROPERTY INSURANCE POLICY.

ADDITIONAL TERMS, CONDITIONS AND EXCLUSIONS:

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any
claim or provide any benefit hereunder to the extent that the provision of such cover, payment
of such claim or provision of such benefit would expose that (re)insurer to any sanction,
prohibition or restriction under United Nations resolutions or the trade or economic sanctions,
laws or regulations of the European Union, United Kingdom or Unites States of America.

**Fraudulent Claim Clause**

If the (re)insured's Risk Manager or Chief Executive Officer shall make any claim knowing the
same to be false or fraudulent, as regards amount or otherwise, this contract shall become void
and all claim hereunder shall be forfeited.

**Mold/Fungus Clause**

In consideration of the premium charged, it is hereby understood and agreed that this policy is
amended as follows:

The Company shall not be liable for any loss or damage caused by, arising out of, contributed
to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or
produced by or emanating from such fungus, mold(s), mildew or yeast;

   a)  Fungus includes, but is not limited to, any of the plants or organisms belonging to the
       major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts
       and mushrooms;

   b)  Mold(s) includes, but is not limited to, any superficial growth produced on damp or
       decaying organic matter or on living organisms, and fungi that produce mold(s);

   c)  Spores means any dormant or reproductive body produced by or arising or emanating
       out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

Regardless of any other cause or event that contributes concurrently or in any sequence to
such loss.

However, this policy is extended to cover the direct physical loss or damage to insured property
caused by or resulting from fungus, mold or mildew, when fungus, mold or mildew is the direct
result of direct physical loss or damage insured by this policy. This coverage includes any cost
or expense to clean up, remove, contain, treat, detoxify or neutralize fungus, mold or mildew
from insured property resulting from such loss or damage.

ALW2015 9/30/2015

**APPENDIX 'B'**

The coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

The maximum amount insured and payable under this policy for all mold, mildew or fungus caused by or resulting from such peril is USD 5,000,000 for all parts of any claim and in total (the aggregate limit) for the policy period per insured. This sublimit applies to all sections or extensions of the policy combined under which any claim arises or is made.

The existence of mold, mildew or fungus must be reported to the Company as soon as practicable, but no later than 12 months after the peril first caused any physical loss or damage to insured property during the policy period. This policy does not insure any physical loss or damage by mold, mildew or fungus first reported to Underwriters after that 12 month period.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

**Asbestos Endorsement Exclusion**

A. This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by any Insured Perils:

This coverage is subject to each of the following specific limitations:

1. The said building or structure must be insured under this Policy for damage by that Insured Peril.

2. The Insured Peril must be the immediate, sole cause of the damage of the asbestos.

3. The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Insured Peril first damaged the asbestos. However, this Policy does not insure any such damage first reported to the Underwriters more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4. Insurance under this Policy in respect of asbestos shall not include any sum relating to:

(i) Any faults in the design, manufacture or installation of the asbestos;

(ii) Asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B. Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

**War & Terrorism Exclusion**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting form or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

40

ALW2015 9/30/2015

## APPENDIX 'B'

1. War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. Any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting form or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**Biological and Chemical Materials Exclusion**

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**Service of Suit – as specified by each insurer**

**Privacy – as specified by each insurer**

**OFAC Endorsement**

In consideration of the premium charged, it is agreed that any payment under this Policy shall only be made in full compliance with all U.S.A. Economic or trade sanctions or other laws or regulations, including sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

## APPENDIX 'B'

### ENDORSEMENT NO. REAPA6

Named Insured:        The Members of Real Estate America Property Association, Inc.

Lead Insurer:           Certain Underwriters of Lloyds of London
                              Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER ALL RISK PROPERTY INSURANCE POLICY.

R-T SPECIALTY ASSUMUPTIONS

R-T Specialty assumes the following under this policy:

1. The duty to collect premium from each Insured and pay such premium to Insurer and/or accept return premium from Insurer on behalf of each Insured and pay such return premium to each Insured (as applicable); however, R-T Specialty does not assume any responsibility for paying Insurer delinquent or unpaid premium of any Insured).

2. Each Insured agrees their premium will be paid in full to R-T Specialty for the benefit of the Insurer within 15 days of inception of this policy or if Newly Acquired then within 10 days of the Bind Date as shown on the signed Premium Binder on file with R-T Specialty. If the premium due has not been so paid, written notice of cancellation will be prepared by R-T Specialty and issued by Insurers as per item 3) immediately below.

3. Where Notice of Cancellation is to be issued by Insurers per the terms of Clause 67 of this Policy, R-T Specialty will prepare the appropriate cancellation documentation to the Insured and all necessary Loss Payees, Mortgagees and Additional Insureds, and forward to Insurers for issuance on Insurer paper for mailing to the Insured.

4. The ability to modify the policy with the Insurers, including, but not limited to (a) the addition of-, the deletion of- or the changes to- locations requested by Insureds and/or by their insurable interests; and (b) the ability to add new Insureds.

5. R-T Specialty will have the authority to issue endorsements for non-premium changes on the master policy with a copy to all underwriters on the program through the monthly reports and adjustments bordereau.

6. R-T Specialty will have the authority to issue loss runs at the request of any present or past insured.

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

## APPENDIX 'B'

ENDORSEMENT NO. REAPA7

Named Insured:      The Members of Real Estate America Property Association, Inc.

Lead Insurer:        Certain Underwriters of Lloyds of London
                     Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER ALL RISK PROPERTY INSURANCE POLICY.

QUOTA SHARE PARTICIPATION

This Insurance policy's quota-share percentage shall apply to the Occurrence Limits provided by the policy, as well as a like percentage of any and all sublimits provided. Sublimits are part of and not in addition to the limit of insurance shown. Deductibles at the time of loss shall be allocated amongst participating insurance carriers in a like percentage, attributable to the quota share limit provided by each carrier.

Schedule of Participating Insurance Carriers

| Layer | Percent of Layer | Paper | Policy Number |
|---|---|---|---|
| Aggregate Policy | 20.00% | Underwriters at Lloyds of London | PG1501045 |
| | 15.00% | Aspen Insurance UK Limited | PRAFPY015 |
| | 4.00% | Underwriters at Lloyds of London | RT15PEM037 |
| | 61.00% | Underwriters at Lloyds of London | PG1500944 |
| | 100.00% | | |
| Primary $25 (Excess of Aggregate Policy) | 20.00% | Scottsdale Insurance Company | AJS0000270 |
| | 15.00% | Aspen Insurance UK Limited | PRAFPY015 |
| | 4.00% | Underwriters at Lloyds of London | RT15PEM037 |
| | 61.00% | Underwriters at Lloyds of London | PG1500944 |
| | 100.00% | | |
| $25x$25 | 20.00% | Underwriters at Lloyds of London | URS 2540581.15 |
| | 20.00% | PartnerRe Ireland Insurance Limited | F571013 |
| | 4.00% | Underwriters at Lloyds of London | RT15PEM037 |
| | 4.00% | Hallmark Specialty Insurance Company | 73PRX16EBBD |
| | 4.00% | Underwriters at Lloyds of London | 93PRX16EBBE |
| | 38.00% | First Specialty Insurance Corporation | ESP 2001566 |
| | 10.00% | Underwriters at Lloyd's of London | PD-10771-00 |
| | 100.00% | | |
| $50x$50 | 10.00% | Navigators Specialty Insurance Company | 011525046/00 |
| | 10.00% | Aspen Insurance UK Limited | PXAFW1V15 |
| | 10.00% | PartnerRe Ireland Insurance Limited | F573356 |
| | 10.00% | Hallmark Specialty Insurance Company | 73PRX16EBBF |
| | 10.00% | Underwriters at Lloyd's of London | 93PRX16EBC0 |
| | 30.00% | First Specialty Insurance Corporation | ESP 2001567 |
| | 15.00% | Lexington Insurance Company | 011525046/00 |

ALW2015 9/30/2015

**APPENDIX 'B'**

| | | | |
|---|---|---|---|
| | 5.00% | Underwriters at Lloyd's of London | PD-10771-00 |
| | 100.00% | | |
| $150x$100 | 33.33% | Scottsdale Insurance Company | AJS0000270 |
| | 10.33% | PartnerRe Ireland Insurance Limited | F573357 |
| | 23.00% | Underwriters at Lloyds of London | PG1501041 |
| | 33.33% | Lexington Insurance Company | 011525046/00 |
| | 100.00% | | |
| $250x$250 | 44.00% | Lexington Insurance Company | 011525046/00 |
| | 16.00% | Starr Surplus Lines Insurance Company | SLSTPTY10808315 |
| | 40.00% | Mitsui Sumitomo Insurance Company of America | EXP7000315 |
| | 100.00% | | |
| $200 million TRIA Policy | 100% | Underwriters at Lloyds of London | 2535900 |

All other terms and conditions remain unchanged.

ALW2015 9/30/2015

**APPENDIX 'B'**

ENDORSEMENT NO. REAPA8

Named Insured:          The Members of Real Estate America Property Association, Inc.

Lead Insurer:            Certain Underwriters of Lloyds of London
                         Non-Admitted

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING FORMS PART OF THE MASTER ALL RISK PROPERTY INSURANCE POLICY.

SHARED LIMITS

While a maximum limit of $500,000,000 per occurrence is available to a REAPA-Property Insurance Program member for certain property losses covered by the Master Policy, in the event of a catastrophic loss or accumulation of losses that exceed the maximum occurrence limit during the policy year, the limit will be shared proportionately with all members in the program. Other coverages are subject to an aggregate limit or a sublimit, as described in the Master Policy. In the event of a loss or accumulation of covered losses sustained by the member which collectively exceed the per occurrence or aggregate limits over the policy year, payment to individual covered members will be made on a proportional basis determined by dividing the total insurance limits available by the total loss and then applying the resulting factor to the individual member's loss amount. The Occurrence limit will reinstate automatically if it is exhausted by an occurrence, as defined in the master policy, within the policy term.

LOSS PAYEES, MORTGAGEES, AND ADDITIONAL NAMED INSUREDS

Loss Payees and/or Mortgagees and/or Additional Named Insured's automatically agreed on this contract, as and where applicable without advice to Insurers.



## IRONSHORE INSURANCE SERVICES LLC.
One State Street, 7th Floor, New York, NY 10004
Administrator for Pembroke Managing Agency - Lloyd's Syndicate 4000
UMR # B1100047600114000

NOTICE:

1.   THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED 'NONADMITTED' OR 'SURPLUS LINE' INSURERS.

2.   THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3.   THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.   CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

 5.   FOR ADDITIONAL INFORMATION ABOUT THE INSURER, YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER OR 'SURPLUS LINE' BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 800-927-HELP.

6.   IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

# TERRORISM INCLUDING SABOTAGE INSURANCE
# DECLARATIONS PAGE

**POLICY NUMBER: 002535900**

**Item 1.**      **Named Insured and Mailing Address:**       **REAPA Wholesale**
**6320 Canoga Avenue, 12th Floor**
**Woodland Hills, CA 91367**

**Item 2.**      **Policy Period:**       **From Inception: September 30, 2015 To Expiration:  September 30,  2016**

12.01 a.m. Local Standard Time at the address of the **Named** Insured as shown above

**Item 3.**      **Property Insured:** Real Property & Rents

**Item 4.**      **Location of Property Insured:**

As per the schedule of locations declared to underwriters hereon only.

**Item 5.**      **Territorial Limits: Coverage will apply for locations within the United States**

**Item 6.**      **Total Declared Value of Interests Insured:**

**Property Damage:  As per schedule of locations declared to underwriters hereon**
**Business Interruption:  As per schedule of locations declared to underwriters hereon**

**Item 7.**      **Overall Limit of Liability (Property Damage and Time Element Loss combined):**

USD $200,000,000 Any One Occurrence and in the Aggregate.

**Item 8.**      **Deductible:**

For all claims in respect of one Occurrence, which shall be adjusted in accordance with the terms, Exclusions and Conditions of this Policy, the Underwriters shall only be liable for that part of the Limit of Liability which exceeds the Deductible. The Deductible does not form part of the Underwriters liability for loss and shall remain uninsured.
Only one Deductible will apply in respect of any one Occurrence.  In the event that more than one Deductible applies, then only the higher Deductible will apply.

Amount USD $25,000 Any One Occurrence for Property Damage and Consequential Loss combined, per insured

**Item 9.**          **Service of Suit upon the Underwriters may be made upon:**

Mendes & Mount LLP
750 Seventh Avenue
New York, NY 10019-6829


**Item 10.**          **Recipient of Notice of Insured's Cancellation (via broker or other agent):**

Ironshore Insurance Services LLC.
One State Street, 7th Floor
New York, NY 10004


**Item 11.**          **Recipient of Notice of Insured's Claims or Circumstances (via broker or other agent):**

Ironshore Insurance Services – Syndicate 4000
One State Street, 7th Floor
New York, NY 10004
ATTENTION: CLAIMS
          Or
PMAUSClaims@ironshore.com


**Item 12.**          **Choice of Law:**

New York, United States of America


**Item 13.**          **Broker:**        **Jim Snyder**
                      **R-T Specialty**
                      **477 S. Rosemary Avenue, Suite 215**
                      **West Palm Beach, FL 33401**


**Date:** January 29, 2016


_____
                               **Authorized Signor**



## IRONSHORE INSURANCE SERVICES LLC

ONE STATE STREET, 7TH FLOOR, NEW YORK, NY 10004

ADMINISTRATOR FOR PEMBROKE MANAGING AGENCY - LLOYD'S SYNDICATE 4000

UMR # B1100047600114000

## TERRORISM INSURANCE POLICY

**INSURED:**  REAPA Wholesale                                    **POLICY NUMBER:  002535900**

**INSURING CLAUSE**

Subject to the exclusions, limits and conditions hereinafter contained, this Insurance insures property as stated in the Declarations attaching and forming part of this Policy (hereinafter referred to as the "Schedule") against physical loss or physical damage occurring during the period of this Policy caused by an Act of Terrorism or Sabotage, as herein defined.

For the purpose of this Insurance, an Act of Terrorism means an act or series of acts, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

For the purpose of this Insurance, an act of sabotage means a subversive act or series of such acts committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.



**LOSSES EXCLUDED**

This Policy does not insure against:

1. Loss or damage arising directly or indirectly from nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused.

2. Loss or damage occasioned directly or indirectly by war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or local government entities, civil war, rebellion, revolution, insurrection, martial law, usurpation of power, or civil commotion assuming the proportions of or amounting to an uprising.

3. Loss by seizure or legal or illegal occupation unless physical loss or damage is caused directly by an Act of Terrorism or an Act of Sabotage.

4. Loss or damage caused by confiscation, nationalisation, requisition, detention, embargo, quarantine, or any result of any order of public or government authority which deprives the Insured of the use or value of its property, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade.

5. Loss or damage directly or indirectly arising from or in consequence of the seepage and or discharge of pollutants or contaminants, which pollutants and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant or toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6. Loss or damage arising directly or indirectly from or in consequence of chemical or biological emission, release, discharge, dispersal or escape or chemical or biological exposure of any kind.

7. Loss or damage arising directly or indirectly from or in consequence of asbestos emission, release, discharge, dispersal or escape or asbestos exposure of any kind.

8. Any fine or penalty or other assessment which is incurred by the Insured or which is imposed by any court, government agency, public or civil authority or any other person.

9. Loss or damage by electronic means including but not limited to computer hacking or the introduction of any form of computer virus or corrupting or unauthorised instructions or code or the use of any electromagnetic weapon.

This exclusion shall not operate to exclude losses (which would otherwise be covered under this Policy) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

10. Loss or damage caused by vandals or other persons acting maliciously or by way of protest or strikes, labour unrest, riots or civil commotion.

11. Loss or increased cost occasioned by any public or government or local or civil authority's enforcement of any ordinance or law regulating the reconstruction, repair or demolition of any property insured hereunder.

12. Loss or damage caused by measures taken to prevent, suppress or control actual or potential terrorism or sabotage unless agreed by Underwriters in writing prior to such measures being taken.

13. Any consequential loss or damage, loss of use, delay or loss of markets, loss of income, depreciation, reduction in functionality, or increased cost of working.

14. Loss or damage caused by factors including but not limited to cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies and telecommunications or any type of service.



**15.** Loss or increased cost as a result of threat or hoax.

**16.** Loss or damage caused by or arising out of burglary, house - breaking, looting, theft or larceny.

**17.** Loss or damage caused by mysterious disappearance or unexplained loss.

**18.** Loss or damage directly or indirectly caused by mould, mildew, fungus, spores or other microorganism of any type, nature or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

**PROPERTY EXCLUDED**

This Policy does not cover physical loss or physical damage to:

**1.**     Land or land values.

**2.**     Power transmission, feeder lines or pipelines not on the Insured's premises.

**3.**     Any building or structure, or property contained therein, while such building or structure is vacant or unoccupied or inoperative for more than thirty days, unless the property is intended to be unoccupied in its normal operations.

**4.**     Aircraft or any other aerial device, or watercraft.

**5.**     Any land conveyance, including vehicles, locomotives or rolling stock, unless such land conveyance is declared hereon and solely whilst located at the property insured herein at the time of its damage.

**6.**     Animals, plants and living things of all types.

**7.**     Property in transit not on the Insured's premises.

**CONDITIONS**

**1. JOINT INSUREDS**

The Underwriters' total liability for any loss or losses sustained by any one or more of the Insureds under this Insurance will not exceed the sum insured shown in the Schedule. The Underwriters shall have no liability in excess of the sum insured whether such amounts consist of insured losses sustained by all of the Insureds or any one or more of the Insureds.

**2. OTHER INSURANCE**

This Policy shall be excess of any other insurance available to the Insured covering a loss covered hereunder except such other insurance which is written specifically as excess insurance over this Policy.  When this Policy is written specifically in excess of other insurance covering the peril insured hereunder, this Policy shall not apply until such time as the amount of the underlying insurance, (whether collectible or not), has been exhausted by loss and damage covered by this Policy in excess of the deductible with respect to each and every covered loss.



**3. SITUATION**

This Policy insures property located at the addresses stated in the Schedule.

**4. SUM INSURED**

The Underwriters hereon shall not be liable for more than the sum insured stated in the Schedule in respect of each occurrence and in the Policy aggregate.

**5. DEDUCTIBLE**

Each occurrence shall be adjusted separately and from each such amount the sum stated in the Schedule shall be deducted.

**6. OCCURRENCE**

The term "Occurrence" shall mean any one loss and/or series of losses arising out of and directly occasioned by one Act or series of Acts of Terrorism or Sabotage for the same purpose or cause.  The duration and extent of any one "Occurrence" shall be limited to all losses sustained by the Insured at the property insured herein during any period of 72 consecutive hours arising out of the same purpose or cause.  However no such period of 72 consecutive hours may extend beyond the expiration of this Policy unless the Insured shall first sustain direct physical damage by an Act of Terrorism or an Act of Sabotage prior to expiration and within said period of 72 consecutive hours nor shall any period of 72 consecutive hours commence prior to the attachment of this Policy.

**7. DEBRIS REMOVAL**

This Policy also covers, within the sum insured, expenses incurred in the removal from the insured location of debris of property stated in the Schedule damaged by an Act of Terrorism or an Act of Sabotage.

The cost of removal of debris shall not be considered in determination of the valuation of the property covered.

**8. DUE DILIGENCE**

The Insured (or any of the Insured's agents, sub or co-contractors) must use due diligence and do (and concur in doing and permit to be done) everything reasonably practicable, including but not limited to taking precautions to protect or remove the insured property, to avoid or diminish any loss herein insured and to secure compensation for any such loss including action against other parties to enforce any rights and remedies or to obtain relief or indemnity.

**9. PROTECTION MAINTENANCE**

It is agreed that any protection provided for the safety of the property insured shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.



## 10. VALUATION

It is understood that, in the event of damage, settlement shall be based upon the cost of repairing, replacing or reinstating (whichever is the least) property on the same site, or nearest available site (whichever incurs the least cost) with material of like kind and quality without deduction for depreciation, subject to the following provisions: -

The repairs, replacement or reinstatement (all hereinafter referred to as "replacement") must be executed with due diligence and dispatch;

Until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss;

If replacement with material of like kind and quality is restricted or prohibited by any by-laws, ordinance or law, any increased cost of replacement due thereto shall not be covered by this Policy.

The Underwriters' liability for loss under this Policy shall not exceed the smallest of the following amounts: -

The Policy limit applicable to the destroyed or damaged property,

The replacement cost of the property or any part thereof which was intended for the same occupancy and use, as calculated at the time of the loss,

The amount actually and necessarily expended in replacing said property or any part thereof.

The Underwriters will normally expect the Insured to carry out repair or replacement of the insured property, but if the Insured and the Underwriters agree that it is not practicable or reasonable to do this, the Underwriters will pay the Insured an amount based on the repair or replacement costs, less an allowance for fees and associated costs which are not otherwise incurred. The Underwriters will only pay the Insured up to the Sum Insured shown in the Schedule.

## 11. INCORRECT DECLARATION PENALTY

If the values declared as stated in the Schedule are less than the correct insured values as determined above, then any recovery otherwise due hereunder shall be reduced in the same proportion that the values declared bear to the values that should have been declared, and the Insured shall co-insure for the balance.

## 12. NOTIFICATION OF CLAIMS

The Insured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give written advice as soon as reasonably practicable to the Underwriters and or the Broker, named for that purpose in the Schedule, who is to advise the Underwriters within seven (7) days of such knowledge of any occurrence and it is a condition precedent to the liability of Underwriters that such notification is given by the Insured as provided for by this Policy.

If the Insured makes a claim under this Insurance he must give the Underwriters such relevant information and evidence as may reasonably be required and co-operate fully in the investigation or adjustment of any claim.  If required by the Underwriters, the Insured must submit to examination under oath by any person designated by the Underwriters.



## 13. PROOF OF LOSS

The Insured shall render a signed and sworn proof of loss within sixty (60) days after the occurrence of a loss (unless such period be extended by the written agreement of Underwriters) stating the time, place and cause of loss, the interest of the Insured and all others in the property, the sound value thereof and the amount of loss or damage thereto.

If the Underwriters have not received such proof of loss within two years of the expiry date of this Policy, they shall be discharged from all liability hereunder.

In any claim and/or action, suit or proceeding to enforce a claim for loss under this Policy, the burden of proving that the loss is recoverable under this Policy and that no limitation or exclusion of this Policy applies and the quantum of loss shall fall upon the Insured.

## 14. SUBROGATION

Any release from liability entered into in writing by the Insured prior to loss hereunder shall not affect this Policy or the right of the Insured to recover hereunder. The right of subrogation against any of the Insured's subsidiary or affiliated companies or any other companies associated with the Insured through ownership or management is waived;

In the event of any payment under this Policy, the Underwriters shall be subrogated to the extent of such payment to all the Insured's right of recovery therefor.  The Insured shall execute all papers required, shall cooperate with Underwriters and, upon the Underwriters' request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, attaining the attendance of witnesses and in the conduct of suits and shall do anything that may be necessary to secure such right. The Underwriters will act in concert with all other interests concerned (including the Insured) in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, such amount shall be distributed in the following priorities:

(i) Any interest, (including the Insured's), exclusive of any deductible or self insured retention, suffering a loss of the type covered by this Policy and in excess of the coverage under this Policy shall be reimbursed up to the amount of such loss (excluding the amount of the deductible);

(ii) Out of the balance remaining, the Underwriters shall be reimbursed to the extent of payment under this Policy;

(iii) The remaining balance, if any, shall inure to the benefit of the Insured, or any insurer providing insurance primary to this Policy, with respect to the amount of such primary insurance, deductible, self insured retention, and/or loss of a type not covered by this Policy.

The expense of all proceedings necessary to the recovery of any such amount shall be apportioned between the interests concerned, including that of the Insured, in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are instituted solely on the initiative of Underwriters, the expense thereof shall be borne by the Underwriters.

## 15. SALVAGE AND RECOVERIES

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.



**16. FALSE OR FRAUDULENT CLAIMS**

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims and benefit hereunder shall be forfeited.

**17. MISREPRESENTATION**

If the Insured has concealed or misrepresented any material fact or circumstance relating to this Insurance, this Insurance shall become void. If the Insured is unsure what constitutes material fact(s) or circumstance(s), they should consult their broker or agent.

**18. ABANDONMENT**

There shall be no abandonment to the Underwriters of any property.

**19. INSPECTION AND AUDIT**

The Underwriters or their agents shall be permitted but not obligated to inspect the Insured's property at any time.

Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe.

The Underwriters may examine and audit the Insured's books and records at any time up to two years after the final termination of this Policy, as far as they relate to the subject matter of this Insurance.

**20. ASSIGNMENT**

Assignment or transfer of this Policy shall not be valid except with the prior written consent of the Underwriters.

**21. RIGHTS OF THIRD PARTIES EXCLUSION**

This Policy is effected solely between the Insured and the Underwriters.

This Policy shall not confer any benefits on any third parties, including shareholders, and no such third party may enforce any term of this Policy.

This clause shall not affect the rights of the Insured.



**22. CANCELLATION**

This Policy shall be non-cancellable by the Underwriters or the Insured except in the event of non-payment of premium where the Underwriters may cancel the Policy at their discretion.

In the event of non-payment of premium this Policy may be cancelled by or on behalf of the Underwriters by delivery to the Insured or by mailing to the Insured or the Broker by registered, certified, or other first class mail, at the Insured's address as

shown in this Policy, written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective. The mailing of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**23. ARBITRATION**

If the Insured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two (2) chosen shall before commencing the arbitration select a competent and disinterested umpire.
The arbitrators together shall determine such matters in which the Insured and Underwriters shall so fail to agree and shall make an award thereon and the award in writing of any two(2), duly verified, shall determine the same, and if they fail to agree, they will submit their differences to the umpire.
The parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

**24. SEVERAL LIABILITY**

The Underwriters' obligations under this Policy are several and not joint and are limited solely to their individual subscriptions. The Underwriters are not responsible for the subscription of any co-subscribing Underwriter who for any reason does not satisfy all or part of its obligations.

**25. LEGAL ACTION AGAINST UNDERWRITERS**

No one may bring a legal action against Underwriters unless:

There has been full compliance by the Insured with all of the terms of this Policy; and

The action is brought within two (2) years after the expiry or cancellation of this Policy.

**26. MATERIAL CHANGES**

The Insured shall notify the Underwriters of any change of circumstances which would materially affect this Insurance.

**27. EXPERTS FEES**

This Insurance includes, within the sum insured, the necessary and reasonable fees of architects, surveyors, consulting engineers and other professional experts which are incurred in reinstating or repairing the insured property following damage insured under this Policy.



**28. LAW**

As specified in the Schedule.

**29. JURISDICTION**

As specified in the Schedule.

**30. SERVICE OF SUIT**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, One State Street Plaza, 8th Floor, New York, NY 10004, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Date:     <u>November 19, 2015</u>

<u> </u>

Authorized Signor



# IRONSHORE INSURANCE SERVICES LLC

ONE STATE STREET, 7TH FLOOR, NEW YORK, NY 10004

ADMINISTRATOR FOR PEMBROKE MANAGING AGENCY - LLOYD'S SYNDICATE 4000

UMR# B1100047600114000

# TERRORISM INSURANCE POLICY

**INSURED:** REAPA Wholesale                    **POLICY NUMBER: 002535900**

**Terrorism and Sabotage Business Interruption Extension**

In consideration of the premium paid, and subject to the EXCLUSIONS, CONDITIONS AND LIMITATIONS of the Policy to which this Extension is attached, and also to the FOLLOWING <u>ADDITIONAL</u> CONDITIONS, EXCLUSIONS AND LIMITATIONS, this Policy is extended to cover loss resulting from necessary Interruption of Business caused by Direct Physical Loss or Damage, as covered by the Policy to which this Extension is attached, to the Property Insured.

In the event of such Direct Physical Loss or Damage, the Underwriters shall be liable for the actual loss sustained by the Insured resulting directly from such necessary Interruption of Business, but not exceeding the reduction in Gross Earnings, as defined hereafter, less charges and expenses which are not necessary during the Interruption of Business, for a period not to exceed the lesser of:-

**a)** such length of time as would be required, with the exercise of due diligence and dispatch, to repair, rebuild or replace such part of the property as has been destroyed or damaged,

or

**b)** eighteen (18) calendar months,

commencing with the date of such Direct Physical Loss or Damage and not limited by the expiration of this Policy.

Due consideration shall be given to the continuation of normal charges and expenses, including payroll expenses, to the extent necessary to resume operations of the Insured with the same operational capability as existed immediately before the loss.

CONDITIONS

1.      **Direct Loss or Damage**

No claim shall be payable under this Extension unless and until a claim has been paid, or liability admitted, in respect of Direct Physical Loss or Damage to Property Insured under the Policy to which this Extension is attached and which gave rise to Interruption of Business.

This Condition shall not apply if no such payment shall have been made, or liability admitted, solely owing to the operation of a Deductible in said Policy which excludes liability for losses below a specified amount.

2.      **Values Declared (and Incorrect Declaration Penalty)**

The premium for this Extension has been based on a statement of individual values declared to and agreed by the Underwriters at the inception of the Policy and stated in the Schedule.



If any of the individual values declared are less than the equivalent amount of the Co-insurance percentage, as stated in the Schedule, of the Interruption of Business values, then any recovery otherwise due hereunder shall be reduced in the same proportion that the individual value(s) declared bear to the value(s) that should have been declared and the Insured shall co-insure for the balance.

3.      **Resumption of Operations**

If the Insured could reduce the loss resulting from the Interruption of Business,

a)      by complete or partial resumption of operation of the property,

and/or

b)      by making use of Merchandise, Stock (Raw, In Process or Finished), or any other property at the Insured's locations or elsewhere,

and/or

c)      by using or increasing operations elsewhere,

then such possible reduction shall be taken into account in arriving at the amount of loss hereunder.

4.      **Expenses to reduce Loss**

This Extension also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Extension (except expenses incurred to extinguish a fire), and, in respect of manufacturing risks, such expense, in excess of Normal, as would necessarily be incurred in replacing any Finished Stock used by the Insured to reduce loss under this Extension; but in no event to exceed the amount by which loss under this Extension is thereby reduced.  Such expenses shall not be subject to the application of any contribution clause.

**EXCLUSIONS**

This Extension does not insure against:-

1.      increase in loss resulting from interference at the insured premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of operation;

2.      increase in loss caused by the suspension, lapse, or cancellation of any lease, licence, contract, or order, unless such results directly from the insured Interruption of Business, and then Underwriters shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy;

3.      increase in loss caused by the enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder;

4.      loss of market or any other consequential loss.

**LIMITATIONS**

1.      The Underwriters shall not be liable for more than the smaller of either:-

**a)**   any specific Business Interruption Sum Insured stated in the Schedule,

or



**b)** the Sum Insured stated in the Schedule, where such includes Business Interruption, if such is a combined limit,

in respect of such loss, regardless of the number of locations suffering an interruption of business as a result of any one occurrence.

2. With respect to loss resulting from damage to or destruction of media for, or programming records pertaining to, electronic data processing or electronically controlled equipment, by the perils insured against, the length of time for which the Underwriters shall be liable hereunder shall not exceed:-

**a)** thirty (30) consecutive calendar days or the time required with exercise of due diligence and dispatch to reproduce the data thereon from duplicates or from originals of the previous generation, whichever is less; or,

**b)** the length of time that would be required to rebuild, repair or replace such other property herein described as has been damaged or destroyed, but not exceeding eighteen (18) calendar months,

whichever is the greater length of time.

**DEFINITIONS**

1. **Gross Earnings are for the assessment of premium and for adjustment in the event of loss defined as,**

The sum of:-

**a)** total net sales value of production or sales of Merchandise,

and

**b)** other earnings derived from the operations of the business,

less the cost of

**c)** Raw Stock from which production is derived,

**d)** supplies consisting of materials consumed directly in the conversion of such Raw Stock into Finished Stock, or in supplying the services sold by the Insured,

**e)** Merchandise sold including packaging materials therefor,

**f)** materials and supplies consumed directly in supplying the service(s) sold by the Insured,

**g)** service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract,

**h)** the difference between the cost of production and the nett selling price of Finished Stock which has been sold but not delivered.

No other costs shall be deducted in determining Gross Earnings.

In determining Gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter had loss not occurred.

**2. Raw Stock**

Material in the state in which the Insured receives it for conversion into Finished Stock.



**3.      Stock in Process**

Raw Stock which has undergone any ageing, seasoning, mechanical or other process of manufacture at the Insured's premises but which has not become Finished Stock.

**4.      Finished Stock**

Stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

**5.      Merchandise**

Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

**6.      Normal**

The condition that would have existed had no loss occurred.

Date:   <u>November 19, 2015</u>

Authorized Signor



## IRONSHORE INSURANCE SERVICES LLC.

One State Street, 7th Floor, New York, NY 10004

Administrator for Pembroke Managing Agency - Lloyd's Syndicate 4000

UMR# B1100047600114000

**Endorsement #1**

**Policy Number:** 002535900                                          **Effective Date: September 30, 2015**
**Insured Name:  REAPA Wholesale**

## OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Date:**      November 19, 2015

**Authorized Signor**



## IRONSHORE INSURANCE SERVICES LLC.

One State Street, 7th Floor, New York, NY  10004

Administrator for

## Pembroke Managing Agency - Lloyd's Syndicate 4000

UMR # B1100047600114000

**Endorsement # 2**

**Policy Number: 002535900**                                        **Effective Date: September 30, 2015**
**Insured Name:  REAPA Wholesale**

### (RE)INSURERS LIABILITY CLAUSE

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of Liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

WT.END.LMA3333.002 (4.15 ed.)                                                                                                      Page 1 of 2

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____          <u>November 19, 2015</u>
**Authorized Representative**                                          **Date**



**IRONSHORE INSURANCE SERVICES LLC.**

One State Street, 7th Floor, New York, NY  10004

Administrator for

**Pembroke Managing Agency - Lloyd's Syndicate 4000**

UMR # B1100047600114000

**Endorsement # 3**

Policy Number: 002535900                                    Effective Date: September 30, 2015

Insured Name:  REAPA Wholesale

## Special Conditions Endorsement

90 days premium payment terms

Terrorism and/or Sabotage coverage hereon is subject to prior agreement of Insurers for any newly acquired property, or miscellaneous unnamed locations situated within the boundaries of the following zip codes, regardless of any zip codes assigned specifically to an individual building or post office box number; or within countries not covered on the schedule of insured properties declared at inception;

New York City: 10001 to 10048 and 10128

Chicago: 60601 to 60611

San Francisco: 94101 to 94134

Washington DC: 20001 to 20037, 20373, 56901 and 56920

Boston: 02108 to 02116 and 02118

Houston: 77002

Seattle: 98101 & 98104

All other zip codes within the United States to be reported quarterly and adjusted quarterly with prior rate agreement of Insurer.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____          <u>November 19, 2015</u>

**Authorized Representative**                          **Date**



## IRONSHORE INSURANCE SERVICES LLC.

One State Street, 7th Floor, New York, NY 10004

## Administrator for Pembroke Managing Agency - Lloyd's Syndicate 4000
UMR# B1100047600114000

**Endorsement #4**

**Policy Number: 002535900**                                    **Effective Date: September 30, 2015**
**Insured Name: REAPA Wholesale**

# SPECIAL CONDITIONS ENDORSEMENT

Policy Form WT.COV.LMA3030.001, Insuring Clause, is amended to read:


Subject to the exclusions, limits and conditions hereinafter contained, this Insurance insures property as stated in the Schedule attaching and forming part of this Policy (hereinafter referred to as the "Schedule") against physical loss or physical damage for risks attaching during the period of this Policy caused by an Act of Terrorism or Sabotage, as herein defined.

For the purpose of this Insurance, an Act of Terrorism means an act or series of acts, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

For the purpose of this Insurance, an act of sabotage means a subversive act or series of such acts committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.


.



**Date:**   February 1, 2015

**Authorized Signor**