IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00824-PAB

ROOFTOP RESTORATION, INC., a Colorado corporation,

    Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,
ASPEN INSURANCE UK LIMITED, and
SCOTTSDALE INSURANCE COMPANY,

    Defendants.

## SECOND ORDER TO SHOW CAUSE

This matter is before the Court on defendant Scottsdale Insurance Company's ("Scottsdale") response, Docket No. 35, to the Court's order to show cause, Docket No. 32. Scottsdale asserts that the Court has diversity jurisdiction over this case. Docket No. 35 at 6, ¶ 19.

Scottsdale removed this case from state court on March 19, 2021. *See* Docket No. 1. On April 20, 2021, the Court ordered Scottsdale to show cause why the case should not be remanded due to the Court's lack of subject matter jurisdiction. *See* Docket No. 32 at 5. Specifically, the Court noted that Scottsdale's allegations as to defendant Certain Underwriters at Lloyd's of London (the "Syndicate") and defendant Aspen Insurance UK Limited were insufficient. *Id.* at 2-4

In Scottsdale's response to the Court's first order to show cause, Scottsdale represents that the membership rules for Lloyd's of London ("Lloyd's") have changed.

*See* Docket No 35 at 5. As a result of those changes, any member of a Lloyd's syndicate must be a "[United Kingdom] tax resident." *See id.*; *see also* Docket No. 35-3 at 1. Scottsdale asserts that, because "any corporate or individual member subscribing to policies through the Lloyd's of London marketplace must be a resident of the United Kingdom after January 1, 2015, and since the operative policy in this case incepted on July 2, 2016, Lloyd's is a resident of the United Kingdom" and thus is "diverse from [p]laintiff." Docket No. 35 at 6, ¶ 18. Scottsdale misunderstands what is required for citizenship under 28 U.S.C. § 1332.

First, the Court explicitly noted in its first order to show cause that Scottsdale may not simply allege that each "name" or member of the Syndicate is not of the same citizenship of plaintiff, but must specifically plead the citizenship of each of the members. *See* Docket No. 32 at 4 n.3 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)). Even if Scottsdale's analysis of Lloyd's membership rules is correct, Scottsdale would still be required to identify members of the Syndicate and plead their citizenship. Scottsdale cannot simply allege that any and all Lloyd's members are diverse from plaintiff. Rather, "to establish diversity of citizenship as to a Lloyd's underwriting syndicate, the citizenship of every participating Name must be affirmatively alleged." *See Montgomery v. Markel Int'l Ins. Co. Ltd.*, 259 F. Supp. 3d 857, 866 (N.D. Ill. 2017). This is because Lloyd's is not an insurance company, but a group of underwriters, and it is those underwriters' citizenships that Scottsdale must demonstrate. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010). Thus, Scottsdale must identify each member of the Syndicate and allege that member's citizenship.

Second, although each member of Lloyd's must be a United Kingdom tax resident, an analysis of Lloyd's rules demonstrates that United Kingdom tax residency does not necessarily equate to citizenship for purposes of an analysis of diversity jurisdiction.  A Lloyd's member may be one of three types of tax resident: "individual, company[,] or SLP/LLP."  *See* Docket No. 35-4 at 2.  The Court addresses each in turn.  An individual may be a UK tax resident if he or she meets one of several UK government tax tests.  *See* Docket No. 35-6 at 3.  First, there are "[a]utomatic UK tests," which automatically qualify an individual as a UK tax resident: (1) an individual will be considered a tax resident if he or she has "been in the UK for 183 or more days"; (2) a person will be considered a UK tax resident if he or she had a home in the UK during the tax year, and had that home for 91 consecutive days, was in the home for at least 30 days, and the person had no overseas home or, if he or she did, spent fewer than 30 days in the overseas home; and (3) a person will be considered a UK tax resident if he or she worked full time in the UK in the last 365 days, more than 75% of those days were for work over three hours, and at least one of those 365 days overlaps with the current tax year.  *Id.* at 4-5.  If a person meets the first step, being in the UK for over 183 days, "[t]here is no need to consider any other tests."  *Id.* at 3.  However, if a person meets one of the other two tests, the automatic overseas tests must be applied.  *Id.*

There are three automatic overseas tests: an individual will not be considered a tax resident (1) if he or she was a tax resident in one or more of the three previous years, but spent fewer than 16 days in the UK during the current tax year; (2) if he or

she was not a tax resident in the previous three years and spent fewer than 46 days in the UK in the current tax year; and (3) if he or she works full-time outside of the UK, spent fewer than 91 days in the UK, works fewer than 31, 3-hour days in the UK, and has no "significant break" from the work taking place outside of the UK.  *Id.* at 4.  If an individual does not meet any of these tests and meets one of the automatic UK tests, he or she will be considered a UK tax resident.  *Id.* at 3.  Conversely, if an individual does not meet one of the UK tests, but does meet the overseas tests, he or she will not be an UK tax resident.  *Id.*  In situations where an individual does not meet either of the automatic tests, that person is to apply the "[s]ufficient ties test," which seeks to determine whether the individual's "connections to the UK . . . taken together with the number of days . . . spen[t] in the UK, will make you a resident for that particular tax year."  *Id.* at 5.  The determination of UK tax residency should consider several "ties" to the UK, such as family, work, or accommodation.  *Id.*  Whether someone has sufficient ties to the UK to be a tax resident will depend on the number of ties that person has, how long he or she has been in the UK, and whether he or she was a previous UK tax resident.  *Id.* at 5-7.

Critically, none of the tests for determining whether an individual is a UK tax resident also determines whether that individual is a citizen of a U.S. state, in this instance, Colorado, for purposes of diversity jurisdiction.  "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile."  *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006).  "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there."  *Id*.

at 1260.  Additionally, residency is not synonymous with domicile, *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (citations omitted)), and only the latter is determinative of a party's citizenship.  *See Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity.").  The various UK tax tests merely focus on that individual's length of residence in the UK and not to that person's intent to remain there indefinitely.  For example, someone who has spent 183 days in the UK will automatically qualify as a UK tax resident without regard to any other test.  *See* Docket No. 35-6 at 3.  But an individual's mere presence in the UK– even for 183 days – does not necessarily mean that individual is not a Colorado citizen.  Rather, to establish domicile individual must be both physically present in a place and intend to remain there indefinitely.  *Smith*, 445 F.3d at 1259.  As a result, an individual could leave his domicile in Colorado and live in the UK for 183 days "without necessarily changing his domicile."  *Id.* at 1260; *see also Holyfield*, 390 U.S. at 48.

Conversely, someone who is automatically disqualified as a UK tax resident under the automatic overseas tests may still nonetheless be domiciled in the UK.  An individual who was a previous tax resident but spent fewer than 16 days in the UK will not be a tax resident for that tax year.  *See* Docket No. 35-6 at 3.  However, that person may nonetheless be a citizen of the UK for diversity purposes, as all that is required is physical presence in a location and the intent to remain.  *Smith*, 445 F.3d at 1259.  This

can happen "instantly," even if that person is there for fewer than 16 days, regardless of the UK's rules for tax residency. *See* 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3613 (3d ed. 2008) (noting that domicile can be "acquired instantly" and "[n]o minimum residence period is required to effect a change for the purpose of determining diversity of citizenship jurisdiction"). Accordingly, that an individual is a UK tax resident does not inform the Court of that individual's citizenship for diversity jurisdiction. Thus, even though every Lloyd's member must be a UK tax resident, if that member is an individual, that member may still be a citizen of Colorado, thereby defeating diversity jurisdiction.

A "company" is automatically a UK tax resident if it is incorporated in the UK. *See* Docket No. 35-5 at 2 ("[A] company incorporated in the UK is a resident there for the purposes of the Taxes Acts."). If a company is not incorporated in the UK, it may still be a UK tax resident if it "carr[ies] on business at a specified time or during a relevant period." *Id.* The primary test for determining whether a business incorporated outside of the UK carries on business within the UK asks where the company's "central management and control actually abides." *Id.* at 2. This test looks to the "highest level of control of the business of a company . . . [and] is to be distinguished from the place where the main operations of a business are to be found." *Id.* at 3. Thus, a Lloyd's member that is a company must either be (1) incorporated in the United Kingdom or (2) exercise central management and control of the company within the United Kingdom. *See id.* at 2-3. This, however, is insufficient to determine the company's citizenship for purposes of diversity without specifically pleading that member's citizenship.

A corporation is citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  In some situations, a corporation that is a Lloyd's member might be a UK citizen.  For example, it might be both incorporated in the UK and exercise its management and control in the UK.  In that situation, the corporation's place of incorporation and principal place of business coincide.  *See* Docket No. 35-5 at 2 (noting that "principal place of business" is the equivalent to place of management).  But that might not always be the case.  A business could be incorporated in the United Kingdom, thus rendering it a tax resident, but that business might have its principal place of business outside of the UK; there is no requirement that a UK tax resident be both incorporated in the UK and have its principal place of business in the UK.  *Id.* at 2-3.  The converse is also true.  A corporation might be a UK tax resident because its principal place of business is within the UK, but be incorporated elsewhere, whether that is the United States or another country.  In other words, even if a corporation meets the criteria for being a UK tax resident, it could still be a citizen of Colorado if it is incorporated in Colorado or has its principal place of business in Colorado.

Finally, a Lloyd's member might be either a special limited partnership ("SLP") or a limited liability partnership ("LLP").  *See* Docket No. 35-4 at 2.  Under UK law, SLPs and LLPs are "tax transparent," which means that a partner of the organization must confirm that all members of the SLP or LLP "meet the tax residency test." *Id.*  To that end, "[a]ll partners or members must therefore have confirmed their tax status to the SLP or the LLP in writing."  *Id.*  For purposes of determining jurisdiction, SLPs and LLPs

7

have the citizenship of their partners, *see Grynberg v. Kinder Morgan Energy Partners, L.P.* 805 F.3d 901, 906 (noting that the citizenship of unincorporated associations, like limited partnerships, is determined by the members of the association), much like a Lloyd's tax residency test.  Determining the citizenship of an SLP or LLP that is a Lloyd's member requires knowing who the members of the SLP or LLP are and their citizenships.  A member could be a natural person, a company, or, perhaps, another SLP or LLP.  While each of those types of members might be UK tax residents, they are not, for the reasons already explained, necessarily UK citizens for purposes of diversity.  An SLP or LLP might have no members who are citizens of U.S. states or it might have many.  And one of those members might defeat diversity jurisdiction.

Accordingly, while Scottsdale is correct that every Lloyd's member must be a UK tax resident, that is insufficient for purposes of diversity jurisdiction.  Scottsdale must specifically identify each Lloyd's member and allege that member's citizenship.  Because Scottsdale has failed to identify the citizenship of each member of the Lloyd's syndicate, the Court is unable to determine whether the Court has jurisdiction.  Therefore, it is

**ORDERED** that, on or before **September 22, 2021**, Scottsdale shall show cause why this case should not be remanded to state court due to the Court's lack of subject matter jurisdiction.

DATED September 7, 2021.

                                      BY THE COURT:

                                      PHILIP A. BRIMMER
                                      Chief United States District Judge